Wilde J.
The principal question raised by the bill and ' answer is, whether a voluntary settlement fairly made, and without power of revocation reserved in the deed of settle *304 ment, can be set aside by the settler, or by a court of equity on ^*s application.
The affirmative is maintained in Lord Ormond’s case, cited in 1 Vern. 101, but all the subsequent authorities are the other way. In the case of Villers v. Beaumont et al. 1 Vern. 100, the chancellor says, “ If a man will improvidently bind himself up by a voluntary deed, and not reserve a liberty to himself by a power of revocation, this court will not loose the fetters he hath put upon himself, but he must lie down under his own folly; for if you would relieve in such a case, you must consequently establish the proposition, viz. that a man can make no voluntary disposition of his estate, but by his will only, which would be absurd.” In the case of Boughton v. Boughton, l Atk. 625, the same doctrine is laid down So also in the case of Clavering v. Clavering, 2 Vern. 475; where it was said, that if a prior deed could be discharged because voluntary, by a subsequent deed voluntary also, then there would not be any necessity of inserting powers of revocation, according to the established mode of conveyancing.
In the case of Worrall v. Jacob, 3 Meriv. 270, where the cases are reviewed, it was decided, that a voluntary deed or settlement, once perfected, could not be revoked at pleasure, even though the maker had retained it in his own possession. And the same decision was made in the case of Clavering v. Clavering, before cited, and in the case of Brookbank v. Brookbank, 1 Eq. Ca. Abr. 168 ; and the same doctrine has been frequently recognised in other cases. And Sir Joseph Tekyl was so cl ?or in the opinion, that a voluntary deed once perfected could not be revoked at pleasure, that he established the copy or counterpart of the first deed, though the original had been destroyed by the maker.
Indeed courts have gone so far as to refuse to relieve against a voluntary settlement, under such strong circumstances as where the settlement was made upon a mere stranger and the settler afterwards married and had children, and' thereupon made a new settlement on himself, his wife and their issue. Allen v. Arme, 1 Vern. 365; Myddleton v. Kenyon, 2 Ves. jun. 391.
The cases cited by the plaintiffs’ counsel are not incónsist
*305 ent with these decisions, and fail entirely to maintain the principle they contend for. All those cases refer to voluntary covenants or agreements, and not to settlements actually made; or to cases where settlements had been left incomplete, so as not to be binding in law. In all such cases courts of equity refuse to interferí and grant relief to mere volunteers. So courts of equity will set aside voluntary settlements, where any undue influence has been used ; and such influence may be presumed from the subsisting relation between the parties ; as in case of a voluntary settlement or gift by a ward in favor of his guardian, or by a child in favor of his parent But in the latter case a settlement is not to be set aside, merely from the circumstance that it was made under parental influence. To authorize a court of equity thus to interfere, something unfair or unreasonable must be made to appear, in the terms and effects of the settlement. Thus if a child, possessed of an estate in fee, should, by the persuasion and influence of his father, make a settlement reducing himself to a mere tenant for life, with remainder to his children, the settlement would be valid. Atherley’s Law of Marriage, 363. In Brown v. Carter, 5 Ves. 862, Lord Moanley asks, “ What is there unreasonable in the settler tying himself up to an estate for life, and leaving it to his children ? Perhaps,” he adds, “ under the circumstances of the case it would be better for him
In the case under consideration, there is certainly no color for the suggestion, that any undue influence was used by the father. No benefit was secured to him. The settlement was a reasonable and prudent provision for the security of the daughter and her children ; and in urging the measure, the father only performed his duty as a careful and provident parent.
We are therefore of opinion, that the settlement is valid, and that on no principle are we authorized to set it aside.
As to the supposed merger of the equitable estate in the legal, we think it cannot be maintained by the facts admitted.
By the terms of the indenture, the wife has only an estate for life in the equity; the legal estate vested in the trustee, and was intended to be preserved during the life of the wife, *306 for the benefit of her children. Besides, she has only a poi t'on ^le leSal estate in common with the defendants, so that her legal and equitable estates are not commensurate and cannot coalesce. But if there were a merger of the equitable in the legal estate, then the aid of this Courf as a court of equity would not be necessary, and the '. al should be dismissed.
Thinking, however, as we do, that there is no merger of the equitable interest, we are bound to preserve the trust for the benefit of the children ; and for that purpose a new trustee must be appointed, to whom a conveyance of the trust property will be decreed according to the prayer of the bill. And that part of the bill which prays for the setting aside of the settlement is dismissed.