[No. 14158. Department One. — January 12, 1893.]

# WILLIAM S. CHAPMAN, APPELLANT, v. BANK OF CALIFORNIA, RESPONDENT.

MORTGAGE BY DEEDS ABSOLUTE — DECLARATION OF TRUST — CONVEYANCES IN DISCHARGE OF INDEBTEDNESS — TERMINATION OF TRUST — IMPLIED TRUST — STATUTE OF LIMITATIONS. — Where deeds absolute in form were given to a bank as security for indebtedness, and the bank executed a declaration of trust, declaring that the lands conveyed were held as security, and the debtor finally, being overwhelmed with debt, and unable to meet his liabilities to the bank, proposed to convey the lands to the bank in fee-simple absolute, in discharge and satisfaction of the indebtedness, and a final settlement was thereupon made, and new conveyances absolute in form executed to and accepted by the bank, which surrendered the evidences of indebtedness to the debtor, no oppression or unfairness appearing on the part of the bank, and the settlement being fair and for a full consideration, the express trust was thereby terminated, and any action to enforce an implied trust was barred in four years after the settlement and delivery of the deeds and notes.

ID. — LACHES — PLEADING. — A court of equity will refuse to entertain a suit brought after an unreasonable delay, regardless of the question whether there has been a plea of the statute of limitations.

ID. — GROUND FOR REFUSING RELIEF. — The refusal to grant relief to a plaintiff guilty of laches is not based upon the presumption of payment, nor upon analogy to the statute of limitations, but upon considerations of public policy, and the difficulty of doing entire justice between the parties in consequence of the unreasonable delay.

ID. — FACTORS OF LACHES — ACQUIESCENCE — LAPSE OF TIME — CHANGE IN VALUE. — The principal factors in determining the question of laches are acquiescence and lapse of time, but other circumstances are also material, such as that a change in the value or character of the property has taken place.

ID. — DISCRETION OF CHANCELLOR. — The matter of laches is left to the sound discretion of the chancellor in each case.

ID. — STALE CLAIM TO RESCIND SETTLEMENT OF TRUST. — A plaintiff who has slept upon his rights so long that the notes which were surrendered to him upon settlement and discharge of an express trust have become barred by the statute of limitations, and who intimated no dissatisfaction with the settlement for nearly eight years, and took no steps for rescission of it during that period, has no equity, but his claim is stale, and the court will not enforce it.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

*T. M. Osmont,* for Appellant.

*James M. Allen,* and *Newlands, Allen & Herrin,* for Respondent.

PATERSON, J.—The findings of the court below disclose the nature of the action and relief sought. They are, in substance, as follows: In October, 1875, the plaintiff executed and delivered to McKinley, Glenny, and Latham conveyances of certain real estate, comprising 20,041 acres, undivided, in a larger tract of 86,000 acres, situated in the counties of Kern and Tulare, and at the same time conveyed certain other lands belonging to him, comprising 38,134 acres, situated in the counties of Fresno, Merced, Stanislaus, and Mariposa. About the same time he conveyed to McKinley and Glenny about 26,330 acres, situated in the counties of Alameda, San Mateo, Santa Cruz, Solano, Napa, Merced, Fresno, San Luis Obispo, and San Francisco. These conveyances, though absolute in form, were intended and accepted merely as security for the payment of certain indebtedness due from the plaintiff to the Bank of British North America. Thereafter, said indebtedness, so secured, was assigned to the defendant, and on August 28, 1876, McKinley, Glenny, and Latham conveyed to the defendant all the lands transferred to them as aforesaid. In September, 1876, the plaintiff was indebted to the defendant in the sum of $214,523.97, and Isaac Friedlander was indebted to the defendant in the sum of $500,358.46. The plaintiff executed six promissory notes in divers sums, aggregating his indebtedness to the defendant, which were made payable to Friedlander, and by the latter indorsed and delivered to the defendant. At the same time Friedlander executed six promissory notes, aggregating the amount of his indebtedness to the defendant, which were made payable to the plaintiff, and by him indorsed and delivered to the defendant. On November 25, 1876, the defendant executed and delivered to the plaintiff and Friedlander an instrument designated as a "declaration" of trust," in which it declared that it held all of the lands conveyed by McKinley, Glenny, and Latham as security for the payment of said twelve promissory notes. In August, 1879, " the plaintiff, overwhelmed with debt, and unable to meet his liabilities to the Bank of Cali-

fornia and to others, proposed to and urged the Bank of California to make a settlement with him, and to take all the said lands then held in security in fee-simple absolute in discharge and full satisfaction of said indebtedness." The bank agreed to this settlement, and accepted the plaintiff's proposition. On September 6, 1879, in pursuance of the agreement, and to carry out the settlement, the plaintiff delivered to the bank ten deeds (including the conveyance for the 20,041 acres of land which had been set off to the plaintiff out of the 86,000-acre tract), absolute in form, conveying to the defendant all of said lands, and the bank thereupon canceled and discharged all of said indebtedness, and surrendered the twelve promissory notes to the plaintiff, who has ever since held the same. Said ten conveyances were not executed to secure, and were not intended to secure, said indebtedness, or any part thereof, but were executed by plaintiff to the bank in full satisfaction and payment of all his indebtedness. No part of the lands was ever sold by the bank until after the delivery of said ten deeds. There was no fraud, oppression, or unfairness on the part of the bank. The settlement was fair, and for a full consideration. At the time of said settlement the plaintiff made and delivered to the bank a promissory note for twenty thousand dollars, payable two years after date. This note was never secured by any of the deeds, nor in any manner. Plaintiff never paid the note, but after its maturity — in 1881 — the bank surrendered the note to the plaintiff. Plaintiff never complained of the transaction, and never informed the defendant in any way that he was not satisfied with the settlement until April, 1887, when he demanded an accounting. The court further found that the allegations of the answer relating to the intention of the parties and the nature of the transaction between them were true. It was found that the plaintiff's cause of action was barred by his laches, and by the provisions of sections 318 and 343 of the Code of Civil Procedure. Judgment was entered in favor of the defendant, and plaintiff moved for a new trial; the

motion was denied, and from the order and the judgment, he has appealed.

The findings cover all the material issues, and we think they are supported by the evidence. The question is discussed in the briefs at great length, as to whether the bank, under the McKinley *et al.* deeds and the so-called declaration of trust, was a mortgagee or a trustee; but in view of the conclusion we have reached on another question, we do not deem it necessary to determine whether the appellant's contention in that regard is sound or not.

We think that a complete answer to the appellant's claim for relief — except in so far as it relates to the Friedlander lands, at least — is found in the defendant's plea of the statute of limitations and laches. The ten deeds were delivered to the bank in August, 1879, and a final settlement was completed on September 6, 1879, when the bank surrendered the twelve notes to the plaintiff, and discharged the indebtedness. Mr. Chapman's intention to give the notes and convey the property in fee-simple to the bank is found by the court, and the finding is supported by the evidence. The settlement was not brought about through any importunities on behalf of the defendant, but through the earnest solicitation of the plaintiff himself. In his letter to the bank, prior to the settlement, he stated that it was needless for him to say that if he could not free himself from the burden resting upon him he might as well give up the struggle, and that his indebtedness to the bank was of such magnitude, and so publicly known, that it destroyed his credit. His proposition was accepted, and although a new note of twenty thousand dollars was given by him to the bank, no attempt was ever made to claim it, and it was finally surrendered to him without payment. The note was given without consideration, and never could have been collected by the bank. If there was any consideration for it, it was an unlawful one. The finding of the court, therefore, that the conduct of the bank was not unconscionable or oppressive, is fully sus-

tained by the evidence. Defendant's action was based upon the express request of the plaintiff, who was at the time embarrassed financially, and believed that his only escape from utter ruin was the acceptance by the bank of his proposal.

Conceding that the McKinley *et al.* deeds and the defeasance created an express trust, such trust was terminated by the final settlement of September 6, 1879. It was expressly understood and agreed that the plaintiff was to convey the title of the lands in payment of the indebtedness. If any trust arose under the ten deeds of 1879, it was an implied trust, and plaintiff's remedy was barred four years after the settlement and delivery of the deeds and notes (Code Civ. Proc., sec. 343); and regardless of the question as to whether there has been a plea of the statute of limitations, a court of equity will refuse to entertain a suit brought after unreasonable delay. (*Harris* v. *Hillegass*, 66 Cal. 79; *Bell* v. *Hudson*, 73 Cal. 287; 2 Am. St. Rep. 791.) The refusal to grant relief is not put upon the presumption of payment or analogy to the statute of limitations, but upon considerations of public policy, and the difficulty of doing entire justice between the parties, in consequence of the unreasonable delay. The principal factors in determining whether the plaintiff had been guilty of laches are acquiescence and lapse of time; but other circumstances are also material, such as that a change in the value or character of the property has taken place. The matter is one which is left to the sound discretion of the chancellor in each case. The learned judge of the court below found that the plaintiff's cause of action was barred by his laches, and the finding must stand. The plaintiff never intimated any dissatisfaction with the final settlement until nearly eight years after the same had been effected, when, for the first time, it was claimed that the ten deeds had been given merely as additional security, and it was not until March 11, 1889, that the plaintiff, by his amendment to his complaint, claimed that the deeds were delivered in consideration of the cancellation of the

indebtedness, and " that by reason of the circumstances, . . . . and of plaintiff's helpless situation, he was compelled to submit to said agreement." If plaintiff was imposed upon, it is incredible that he did not discover it earlier than he did. Plaintiff was aware of the sales that were being made, and made frequent inquiries in regard to the same. He has allowed the bank to pay taxes on the lands ever since the settlement; has never offered to return any of the notes surrendered to him by the bank, or to pay the interest or any part of the principal, nor has he ever requested any extension of time for such payment. In the mean time, the notes which were surrendered to him had become barred by the statute of limitations. A party who sleeps upon his rights so long has no equity. His claim is stale, and the court will not enforce it. (*Bailey* v. *Fox*, 78 Cal. 389.)

Appellant contends that he is entitled to the value of the Friedlander lands, or at least to the proceeds of the sale, with interest thereon. The court below made no finding with respect to the Friedlander lands, and treated the action as one in which the plaintiff was seeking an accounting and redemption as to his own lands only, and not for subrogation to and enforcement of the rights of the bank in the land conveyed by Friedlander as further security. There is no description of the Friedlander lands in the complaint, — simply a reference in one of the schedules to the deeds of conveyance made by Friedlander to the bank, giving the names of the grantor and grantee, date of the deed, date of recordation, and volume and page of the record. Perhaps this would be a sufficient description, however, as the plaintiff does not claim a conveyance of the land, but only an accounting for the value of the proceeds of the land, which has already been sold by the bank. As there was no prayer for such relief, and the record did not disclose to the court below that this particular claim was made, we think the contention comes too late. Friedlander's representative would be an indispensable party to an

action in which plaintiff desired such relief, and plaintiff ought to have made him a party defendant herein, and by direct allegation called the attention of the court to the facts upon which he claimed the right to an accounting as to the proceeds of the Friedlander lands.

Judgment and order affirmed.

Harrison, J., and Garoutte, J., concurred.

Hearing in Bank denied.