[S. F. No. 4429. Department One.—May 26, 1908.]

MELISSA J. STEVENSON, Trustee, etc., Appellant, v. THOMAS M. BOYD, Defendant, and JOSEPHINE PORTER BOYD, his Wife, Defendant and Respondent.

TENANTS IN COMMON—PURCHASE OF ENCUMBRANCE AND ADVERSE TITLE —ENFORCEMENT OF TRUST WITHIN REASONABLE TIME.—One tenant in common of land, who purchases an outstanding encumbrance or an adverse title, will be chargeable as trustee for his companions in interest, if they choose within a reasonable time to claim the benefit thereof, by contributing or offering to contribute their proportion of the purchase money.

ID.—LAPSE OF REASONABLE TIME—LACHES IN EQUITY.—Regardless of the question of the statute of limitations, if the right to enforce the trust as against a cotenant is not asserted within a reasonable time, and the plaintiff is chargeable with laches in equity, a court of equity will refuse to entertain the suit.

ID.—PRINCIPAL FACTORS OF LACHES—DISCRETION OF COURT OF EQUITY.— The principal factors in determining whether the plaintiff has been guilty of laches, are acquiescence and lapse of time; but other circumstances are also material, such as a change in the value or character of the property. The matter is one which is left to the sound discretion of the court of equity, in each case.

ID.—LACHES OF COTENANT—PRESUMED REPUDIATION AND ABANDONMENT. —Unless a cotenant claiming the benefit of a purchase, makes his election to participate within a reasonable time, and contributes or offers to contribute his ratio of the consideration actually paid, he will be deemed to have repudiated the transaction and abandoned its benefits.

ID.—LACHES OF APPELLANT AGAINST RESPONDENT—DEED OF TRUST BY COTENANTS—SPECIAL TRUST BY ONE—TITLE UNDER SALE.—Where defendant's husband and appellant's grantor, as tenants in common of a tract of land, executed a deed of trust to secure a large loan from a bank, and appellant's grantor subsequently executed a special trust to appellant for his use for life, and for other uses specified, and the respondent wife, paid one half of the debt secured by the deed of trust and, upon a sale under the deed of trust, the title obtained was transferred in equal shares to defendant husband and respondent wife, who subsequently purchased her husband's interest at a large price, the property having greatly increased in value, and

after the lapse of two days less than four years, from the date of the sale under the deed of trust, and over nineteen months after respondent's acquisition of her husband's title, she having since made improvements on the land and cultivated it in crops, the appellant as trustee for the beneficiaries under the deed of the other cotenant, sought to charge respondent as trustee of the title, *held,* that the suit of appellant as against the respondent, was properly decided by the court below to be barred by laches.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frohman & Jacobs, for Appellant.

M. K. Harris, for Respondent.

Frank H. Short, and F. E. Cook, for T. M. Boyd, Defendant.

SLOSS, J.—Thomas Boyd, now deceased, was the father of Melissa J. Stevenson, the plaintiff, Thomas M. Boyd, one of the defendants, George Culberson Boyd, and Mary Alice Zinns. In December, 1892, Thomas Boyd and his son, the defendant Thomas M. Boyd, each then owning an undivided one half of an eighty-acre tract of land situated in Fresno County, executed a deed of trust of said real property to E. R. Hamilton and W. P. Coleman, as security for the payment of their promissory note for three thousand two hundred dollars, payable two years after date to the Sacramento Bank. In October, 1897, Thomas Boyd, the father, conveyed his undivided one-half interest to the plaintiff, in trust to receive the rents and profits and to pay them to the use of the grantor, Thomas Boyd, during his life, and in case George Culberson Boyd should survive his father, to apply such rents and profits for his support and maintenance during his life. The deed of trust gave plaintiff power to sell, mortgage, or lease said real estate, and provided that if the property was not sold by plaintiff, in pursuance of said deed of trust, it should, upon the death of Thomas Boyd and George Culberson Boyd, be vested in the plaintiff and Mary Alice Zinns, share and share alike.

In July, 1897, Thomas M. Boyd married his co-defendant,. Josephine Porter Boyd. Some months thereafter the Sacramento Bank, the holder of the note secured by the deed of trust to Hamilton & Coleman, requested payment of the note. Some attempt was made to raise the money, but it was not. paid, and the bank finally directed the trustees to sell. The sale was originally advertised to take place in March, 1898, but Mrs. Stevenson, the plaintiff, secured from the bank a: postponement for six months. In August, 1898, the defendant. Thomas M. Boyd made arrangements with the Bank of Selma: to pay off the loan of the Sacramento Bank, which at that time amounted to about three thousand four hundred dollars. Of this amount, some eighteen hundred dollars was furnished by the defendant Josephine Porter Boyd, and the balance by the Bank of Selma. The note was assigned by the Sacramento Bank to the Bank of Selma and the latter directed the trustees, Hamilton & Coleman, to make a sale. On October 15, 1898, the trustees did sell the property for three thousand five hundred dollars—a little more than the amount due on the note. The purchaser at the sale was the Bank of Selma, which immediately conveyed to T. M.. Boyd and Josephine Porter Boyd, the defendant. On February 21,. 1901, Thomas M. Boyd conveyed to his co-defendant, Josephine Porter Boyd, an undivided one-half interest in the ranch for seven thousand five hundred dollars, of which five hundred dollars was paid in cash and the balance in instalments, evidenced by notes. Some of these notes were paid by Mrs. Boyd to her husband.

On October 13, 1902, two days less than four years after the sale by the trustees to Thomas M. and Josephine Porter Boyd, and over nineteen months after the conveyance from Thomas M. Boyd to Josephine Porter Boyd, this action was: brought by the plaintiff. The complaint alleged that, prior to the trustees' sale, the defendants, in pursuance of a conspiracy to that end, did by threats of violence and otherwise, prevent the plaintiff from raising the money necessary to pay off her one half of the indebtedness to the Sacramento Bank, and that they procured the Bank of Selma to take an assignment of the note and to direct a sale of the property by the trustees, Hamilton & Coleman, for the purpose of destroying the rights. of plaintiff under the deed from Thomas Boyd. It is alleged.

that the Bank of Selma, in taking the assignment of the
note from the Sacramento Bank, was acting as agent for the
defendants, and not in its own interests. In the complaint
plaintiff offers to pay to the defendants such portion of the
indebtedness paid to the Sacramento Bank and to make such
allowance to the defendants for the cultivation of the prop-
erty since the sale as the court may deem equitable. She
asks for an accounting of the profits, and prays judgment
that it be decreed that she is the owner, as trustee, of an
undivided one-half interest in said real property, and that
defendants be compelled to convey to her such interest free
of encumbrance except for her just share of the indebtedness
to the Sacramento Bank.

Thomas M. Boyd and his wife, Josephine Porter Boyd, an-
swered separately. Each of the answers denies that the
defendants had conspired or contrived to defeat the deed of
trust under which plaintiff claims, or to deprive the plaintiff
as trustee of her interest in the property, or that plaintiff
was prevented by any act of the defendants, or either of them,
from raising the money necessary to pay her share of the
indebtedness. The defendant Josephine Porter Boyd set up
a special defense of laches, alleging that at the time the land
was sold by the trustees to the Bank of Selma, and by the
Bank of Selma to the defendants, its value did not exceed
five thousand dollars; that on February 21, 1901, Thomas M.
Boyd sold his interest in the land to Josephine Porter Boyd
for the sum of seven thousand dollars, more than three thou-
sand dollars of which has been paid in cash and the balance
in notes secured by mortgage; that since said sale by the
trustees to the Bank of Selma and by the Bank of Selma to
the defendants the land has greatly increased in value and
is now of the value of about fifteen thousand dollars; that
the defendant bought the interest of her co-defendant in good
faith and paid and obligated herself to pay the full increased
value thereof to said co-defendant Thomas M. Boyd; that
plaintiff made no claim to any interest as trustee or other-
wise in or to said property and took no steps and made no
effort to subject said property to any claim until it had
greatly increased in value. The defendant further alleges on
information and belief that the plaintiff would not have made
any such claim had the property not increased in value, and

that at the time the defendant Josephine Porter Boyd bought the said property the same was of little value and yielded very little income, and that in buying the same the defendants ran the risk of losing the money paid upon the purchase price thereof. It is further alleged that ever since the sale the defendants have cultivated the land and been in charge thereof and have improved and increased the value of said property.

The answer of Thomas M. Boyd, in addition to its denials of many of the allegations of the complaint, set up a claim as against his wife, the co-defendant Josephine Porter Boyd, his contention being that the eighteen hundred dollars belonging to Josephine Porter Boyd which went into the purchase of the property at the time of the trustees' sale was a loan to him, and that the conveyance of the undivided one-half interest to said Josephine Porter Boyd was made as security for such loan.

The trial resulted in findings and judgment in favor of the defendant Josephine Porter Boyd. The court found against the allegations of the complaint regarding a conspiracy between the defendants, found against the allegation that the sum of eighteen hundred dollars paid by Josephine Porter Boyd was a loan to her co-defendant, and found that the conveyance of October 19, 1898, from the Bank of Selma to Thomas M. Boyd and Josephine Porter Boyd conveyed to each of said defendants an equal undivided one-half interest in and to said property, and that the defendant Josephine Porter Boyd, in consideration of said conveyance, paid as a part of the purchase price for said land the sum of eighteen hundred dollars. It was found that Josephine Porter Boyd did not take the title of such one-half interest as security for any loan to her co-defendant Thomas M. Boyd. The allegations of the answer of Josephine Porter Boyd with reference to the defense of laches are all found to be true, except that the court finds that the value of the property at the time of the conveyance to the defendants was six thousand dollars, instead of five thousand dollars, as alleged in the answer. As conclusions of law the court found that the plaintiff should take nothing against Josephine Porter Boyd, and said Josephine Porter Boyd should have judgment against plaintiff and her co-defendant for her costs. Judgment was entered accordingly. The plaintiff appeals from the judgment.

Thomas M. Boyd has not appealed, and so far as concerns the issues raised by the pleadings between himself and his co-defendant, the finding that the payment of eighteen hundred dollars by the respondent, Josephine Porter Boyd, was not made as a loan to her husband, stands unquestioned.

The appellant's position is that, inasmuch as she and defendant Thomas M. Boyd were cotenants in the property, the latter could not purchase for himself alone the outstanding interest vested in the trustees, Hamilton & Coleman, but was bound to hold any title acquired on such purchase for the equal benefit of himself and his cotenant upon condition that the latter should contribute or offer to contribute her portion of the purchase money. This is undoubtedly the general rule as to cotenants. "A cotenant cannot take advantage of any defect in the common title by purchasing an outstanding title or encumbrance and assert it against his companions in interest. The purchase is, notwithstanding his design to the contrary, for the common benefit of all the cotenants. The legal title acquired by him is held in trust for the others if they choose within a reasonable time to claim the benefit of the purchase by contributing or offering to contribute their proportion of the purchase money." (Freeman on Cotenancy and Partition, 2d ed., sec. 154.) The respondent contends that this principle applies only where the cotenants hold under the same instrument. Whether or not the rule is subject to this qualification is a question which has given rise to a considerable conflict of authority. It need not, however, be here decided. Assuming that the plaintiff (regardless of her allegations that the defendants prevented her from paying off her share of the debt to the Sacramento Bank) was entitled, as against her cotenant and his wife, to claim the benefit of the purchase by them of the interest sold by the trustees, she must still fail, for the reason that the court below found that her cause of action was barred by laches. This finding is fully sustained by the proofs offered and the principles of law applicable.

The plaintiff's delay in seeking relief in the courts had not lasted for such a period as to make the statute of limitations available as a bar to the suit. Undoubtedly mere delay to commence the suit for a period less than that of the statute of limitations is not a sufficient reason for dismissing the

proceeding. (*Lux* v. *Haggin,* 69 Cal. 255, [4 Pac. 919, 10 Pac. 674].) It is well settled, however, that courts of equity will often refuse relief even where the statutory time of limitation has not run. "There must be something more than a mere passive neglect. There must be, in addition, a showing of facts amounting to acquiescence in the acts complained of, or of other circumstances which, coupled with the delay, will render the granting of the relief inequitable. (*Lux* v. *Haggin,* 69 Cal. 255, [4 Pac. 919, 10 Pac. 674].) In *Chapman* v. *Bank of California,* 97 Cal. 155, 159, [31 Pac. 896], the court says: "Regardless of the question as to whether there has been a plea of the statute of limitations, a court of equity will refuse to entertain a suit brought after unreasonable delay. (*Harris* v. *Hillegass,* 66 Cal. 79, [4 Pac. 987]; *Bell* v. *Hudson,* 73 Cal. 287, [2 Am. St. Rep. 791, 14 Pac. 791].) The refusal to grant relief is not put upon the presumption of payment or analogy to the statute of limitations, but upon considerations of public policy, and the difficulty of doing entire justice between the parties in consequence of the unreasonable delay. The principal factors in determining whether the plaintiff had been guilty of laches are acquiescence and lapse of time; but other circumstances are also material, such as that a change in the value or the character of the property has taken place. The matter is one which is left to the sound discretion of the chancellor in each case."

These principles have been applied with perhaps more than ordinary strictness to the case of a cotenant demanding the benefit of a purchase by the other cotenants. "The right of a cotenant to share in the benefit of a purchase of an outstanding claim, is always dependent upon his having within a reasonable time, elected to bear his portion of the expense necessarily incurred in the acquisition of the claim. . . . The cotenant asking a court of equity to award him the benefit of a purchase, must show reasonable diligence in making his election. Whatever delay he may have occasioned must be entirely consistent with perfect fair dealing on his part and in no wise attributable to an effort to retain the advantages while he shirks the responsibilities of the new acquisition." (Freeman on Cotenancy and Partition, 2d ed., sec. 156.) In *Mandeville* v. *Solomon,* 39 Cal. 125, this court said: "Equity does not deny to a tenant in common the right to purchase

in an outstanding or adverse claim to the common property; it however deals with the tenants after such a purchase is made. While it will not permit one of them to acquire such a title solely for his own benefit, or to the absolute exclusion of the other, it at the same time exacts of that other the exercise of reasonable diligence in making his election to participate in the benefit of the new acquisition; and having, upon its own principles of fair dealing, compelled the purchasing tenant to allow his cotenant this opportunity, the latter will not be permitted to equivocate or trifle with the position thus afforded him, or to make it a means of speculation for himself, by delaying, until the rise of the land or some event yet in the future shall determine his course. Unless he make his election to participate within a reasonable time, and contributes or offers to contribute his ratio of the consideration actually paid, he will be deemed to have repudiated the transaction and abandoned its benefits." (See, also, 17 Am. & Eng. Ency of Law, 2d ed., p. 679; *Stevens* v. *Reynolds,* 143 Ind. 467, [52 Am. St. Rep. 422, 41 N. E. 931]; *Reed* v. *Reed,* 122 Mich. 77, [80 Am. St. Rep. 541, 80 N. W. 996]; *Buchanan* v. *King,* 22 Grat. 414; *Morris* v. *Roseberry,* 46 W. Va. 24, [32 S. E. 1019]; *McFarlin* v. *Leaman,* [Tex. Civ. App.] 29 S. W. 44.)

We think the facts shown in the case at bar are clearly sufficient to justify the conclusion of the court, that so far as the defendant Josephine Porter Boyd is concerned, the delay of the plaintiff was so great as to deprive her of the right to seek the relief here demanded. It is not disputed that the plaintiff knew of the trustees' sale and of the conveyance by the Bank of Selma to the defendants at the time these transactions took place. In the meanwhile, the respondent has purchased the interest of her cotenant, has cultivated and cared for the land, has made some improvements upon it, and taken the risks of declining values and failure of crops. It is in evidence, and it is found by the court, that property of this character was in little demand at the time of the sale. Since such sale it has increased greatly in value, until at the time of the trial it had more than doubled in value. We cannot doubt that the court below was fully justified in finding that a delay of almost four years was unreasonable under these circumstances. To permit the plaintiff now to reinstate

herself as the owner of an undivided one-half interest in the land, upon payment of one half of the amount paid at the trustees' sale, thereby securing to herself the full benefit of the increase in the value of the land, without having undergone any of the risks connected with its holding and cultivation, would manifestly be inequitable.

The appellant points out certain facts, which, it is alleged, should have been held to have excused the delay in seeking relief. But whether or not, under all the circumstances, the delay has been such as to render it inequitable to grant the relief is, in the first instance, a question for the trial court, the determination of which is left, as is said in *Chapman* v. *Bank of California,* 97 Cal. 155, 159, [31 Pac. 896], "to the sound discretion of the chancellor in each case." The matters relied on by appellant as explaining her delay were proper to be considered by the court below, but, without stating them at length, we are compelled to say that, giving due effect to all of them, they were not of such character as to require that court to conclude that, at least as against the respondent, Josephine Porter Boyd, the plaintiff had not slept on her rights to such an extent as to require the denial of relief.

Our views on this point make it unnecessary to consider any of the other contentions urged by counsel.

The judgment is affirmed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.