(March 30, 1912.)

## WILLIAM E. WILSON et al., Respondents, v. ANTHONY J. LINDER et al., Appellants.

[123 Pac. 487.]

COTENANCY—JOINT REMAINDERMEN IN EXPECTANCY—DUTY TO PROTECT TITLE—PAYMENT OF TAXES BY REMAINDERMEN — CONTRIBUTION BY JOINT REMAINDERMEN—LACHES—LIMITATION OF ACTION—ADVERSE POSSESSION—MERGER OF LEGAL AND EQUITABLE ESTATES.

(Syllabus by the court.)

1. The rule that a cotenant cannot take advantage of any defect in the common title by purchasing an outstanding title or encumbrance and assert it against his companions in interest is applied in this case to a joint remainderman in expectancy, and accordingly *held* that a remainderman in expectancy cannot acquire a tax title to the property so as to exclude or cut off the expectancy of his coremaindermen where the expectant interests flow from a common title, provided the other remaindermen contribute or offer to contribute their respective shares of the money expended for the protection of such title within a reasonable time.

2. Where one of several remaindermen in expectancy was in possession of the property as lessee of the life tenant, paying the annual rental to the life tenant during the years for which the taxes were allowed to go delinquent, and he subsequently buys the property at delinquent tax sale, he is under no obligation to personally bear the expense of such taxes, and it is the duty of the other remaindermen who claim the protection of such tax title to bear their respective shares of the expenses incurred in the purchase of the property and the payment of such taxes and assessments.

3. It is the duty of a life tenant and those succeeding to his estate by purchase to pay the taxes on the property, and they cannot by payment acquire any adverse rights against the remaindermen; but such duty and obligation does not rest on a mere lessee from the life tenant who pays his annual rent for the land to the life tenant and acquires no other profit or benefit from the lands on account of which a duty arises to defray taxes and assessments.

4. Where a remainderman in expectancy has purchased the land at tax sale and other remaindermen with like expectant interests, all flowing from a common source, seek the protection of the tax deed acquired under such purchase, equity imposes upon them the duty of paying or offering to pay their respective shares of the money thus

expended, and they must do so within a reasonable time in order to entitle them to equitable relief.

5. Equity does not obligate a cotenant to pay out his own money to protect the common title, but it rather permits him to do so, and when he has done so it then lays an obligation upon the other cotenants to exercise reasonable diligence and do equity in contributing their shares in the way of reimbursing him for his outlay, and a failure to do so within a reasonable time will be taken as an election on their part to allow him to take the benefit of his expenditure, and the title he has thus acquired for his individual use and benefit.

6. Where a remainderman in expectancy purchased the property at tax sales for the taxes imposed for the years 1900 and 1901, and his coremaindermen in expectancy had notice of this fact and did not·contribute or offer to contribute their respective shares, and thereafter in November, 1908, commenced an action to have their respective titles in expectancy in the property quieted, and still did not pay or offer to pay their share of the money expended to protect such tax title, *held*, that they are guilty of such delay and laches and lack of equity as to preclude any right of recovery.

7. Where a remainderman in expectancy took a deed in January, 1902, from the life tenant and at a time when it could not be known· or foreseen whether the life estate would mature into a fee simple title or the remaindermen would ever acquire any title or interest in the estate, and the deed thus executed purported to convey an absolute and fee simple title to the estate, and the purchaser took such conveyance believing she was acquiring an absolute estate and entered into the possession of the property thereunder and continued in the open, exclusive and notorious possession thereof, occupying and cultivating the same continuously until the commencement of an action by the other remaindermen in expectancy in November, 1908, paying all taxes and assessments thereon, and making improvements: *Held*, that such facts constitute color of title and adverse possession within the meaning of secs. 4038, 4039 and 4040, Rev. Codes, and bar any right of recovery on the part of the other remaindermen in expectancy.

8. The general and prevailing rule that where legal and equitable titles both meet in the same person, the equitable title is merged in the legal title is subject to the restriction that the merger takes place only where the legal and equitable estates·are coextensive and commensurate.

APPEAL from the District Court of the Third Judicial District for Ada County.  Hon. John F. MacLane, Judge.

Action to quiet title. Judgment for plaintiffs. Defendants appeal. *Reversed.*

Ira E. Barber, for Appellants.

Notice was served on plaintiffs as early. as 1902 of the adverse claim of defendants and cross-complainant, and this adverse claim and tenure supported by conduct giving it the color of integrity continued for more than five years prior to the initiation of this action and amounted to an ouster. (38 Cyc. 25, par. B; *Feliz v. Feliz,* 105 Cal. 1, 38 Pac. 521; *Alvarado v. Nordholt,* 95 Cal. 116, 30 Pac. 211; *Winterburn v. Chambers,* 91 Cal. 170, 27 Pac. 658.)

The taking of a deed purporting to convey the entire estate and having the same recorded was within itself notice of the adverse claim. (*Ames v. Howes,* 13 Ida. 756, 93 Pac. 35.)

Even a quitclaim deed in substantive form will start running the statute of limitations. (*Packard v. Johnson* (Cal.), 4 Pac. 638; *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784.)

A claim asserted under the provisions of such deed is strictly a claim under color of title. (*Wright v. Mattison,* 59 U. S. 50, 15 L. ed. 280; *Little v. Crawford,* 13 Ida. 146, 88 Pac. 975.)

If plaintiffs could sue during the lifetime of Jesse Wilson, at any time after the entry of possession under the deed of 1902, under which they claimed the whole estate, then the statute of limitations began to run against them from the time they had notice, or from the conduct of defendants should have known of the adverse claim. (1 Cyc. 1072, par. B, and cases cited; *Cox v. Tompkinson,* 39 Wash. 70, 80 Pac. 1005; *Schlarb v. Castaing,* 50 Wash. 331, 97 Pac. 289.)

If a tenant pays rent and the landlord enjoys the same, the tenant is under no duty to pay taxes and may purchase the property at tax sale. (*Keith v. Keith,* 26 Kan. 26; *Smith v. Newman,* 62 Kan. 318, 62 Pac. 1011, 53 L. R. A. 934; *Uhl v. Small,* 54 Kan. 651, 39 Pac. 178.)

If a tenant in common is not under obligations to pay taxes on his cotenant's interest, he may buy it in for his own

benefit. (*Bennet v. N. Colo. Land etc.*, 23 Colo. 470, 58 Am. St. 281, 48 Pac. 812.)

In order to preclude a tenant in common from purchasing at a tax sale there must be something which makes it his duty to pay the taxes. (*Blackwood v. Van Vleit*, 30 Mich. 118; *Moss v. Shear*, 25 Cal. 38, 85 Am. Dec. 94; *Sands v. Davis*, 40 Mich. 14; *Palmer v. Ozark Land Co.*, 74 Ark. 253, 85 S. W. 408; *Willard v. Ames*, 130 Ind. 351, 30 N. E. 210; *Nagle v. Tieperman*, 74 Kan. 32. 10 Ann. Cas. 977, 85 Pac. 941, 88 Pac. 969, 9 L. R. A., N. S., 674.)

Where a cotenant claims adversely to his cotenants, he may buy at a tax sale and his purchase does not inure to the community. (*Peck v. Lockridge*, 97 Mo. 549, 11 S. W. 246.)

An adverse claimant may strengthen his title by buying at a tax sale. (*Atkison v. Dixon*, 89 Mo. 468, 1 S. W. 13; *Jeffery v. Hursh*, 45 Mich. 59, 7 N. W. 221; *Blackman v. Van Vleit, supra; Carpenter v. Smith*, 76 Ark. 447, 88 S. W. 976.)

A cotenant may by delay lose the right to benefit by the purchase of an outstanding title by his fellow-owner. (*Stevenson v. Boyd*, 153 Cal. 630, 96 Pac. 284, 19 L. R. A., N. S., 525; *Mahoney v. Nevins*, 190 Mo. 360, 88 S. W. 731.)

And he must elect to do this within a reasonable time. (*Stevenson v. Boyd, supra; Savage v. Bradley*, 149 Ala. 169, 123 Am. St. Rep. 30, 43 So. 20; *Mandeville v. Solomon*, 39 Cal. 125; *Craven v. Craven*, 68 Neb. 459, 94 N. W. 604; *Buchanan v. King*, 22 Gratt. (Va.) 414; *Stevens v. Reynolds*, 143 Ind. 467, 52 Am. St. 435, 41 N. E. 931; *Barnes v. Boardman*, 152 Mass. 391, 25 N. E. 623, 9 L. R. A. 571; *Goralski v. Kostuski*, 179 Ill. 177, 70 Am. St. 98, 53 N. E. 720; *Reed v. Reed*, 122 Mich. 77, 80 Am. St. 541, 80 N. W. 996; *Cedar Canyon etc. v. Yarwood*, 27 Wash. 271, 97 Am. St. 841, 67 Pac. 749, 22 Morr. Min. Rep. 11; Freeman on Cotenancy and Partition, 2d ed., 156.)

Where a tenant is free from fault and under no obligation to pay the taxes, it is difficult to assign any reason for restraining him from bidding to his own use at a tax sale. (Freeman on Cotenancy and Partition, 158; *Boynton v. Veld-*

*man,* 131 Mich. 555, 91 N. W. 1022; *Sands v. Davis,* 40 Mich. 14.)

E. J. Dockery, and Cavanah & Blake, for Respondents.

It devolved upon Jesse Wilson and his successors in interest to pay the taxes on this land, and if they failed to pay the taxes and permitted the land to be sold for taxes and bought the land at a tax sale and a certificate was issued to them and thereafter a tax deed, they could not acquire any interest in the land adverse to the respondents. (Black on Tax Titles, sec. 285; *Solis v. Williams,* 205 Mass. 350, 91 N. E. 148; *Widersum v. Bender,* 172 Mass. 436, 52 N. E. 717; *Murch v. Smith Mfg. Co.,* 47 N. J. Eq. 193, 20 Atl. 213; *Defresse v. Lake,* 109 Mich. 429, 63 Am. St. 584, 67 N. W. 505, 32 L. R. A. 744; *Stevens v. Melcher,* 152 N. Y. 551, 45 N. E. 965; *Pike v. Wassell,* 94 U. S. 711, 24 L. ed. 307.)

Linder did not acquire any title to the property by reason of the tax sale, but only an interest in the nature of a lien or mortgage, and he would not become vested with the incidents of true ownership until the time would expire in which he was entitled to receive a deed. (37 Cyc. 1468, and cases cited.)

Whenever the legal and equitable estates in the same land become united in the same person the equitable is merged in the legal estate. (16 Cyc. 668, cases cited.)

A sale or conveyance in due form for taxes extinguishes all prior liens, whether for taxes or otherwise. (*Auditor General v. Clifford,* 143 Mich. 626, 107 N. W. 287; 37 Cyc. 1478, and cases cited.)

"The statute of limitations does not begin to run against the right of a remainderman to recover his remainder interest or establish his title to the same until after the determination of the preceding particular estate; nor is he guilty of laches in failing to assert his claim before the right to the possession of the property accrues." (16 Cyc. 659, and cases cited.)

AILSHIE, J.—This action was instituted by respondents to quiet the title to 160 acres of land described in the complaint. The appellants, who were defendants in the lower court, answered, and the appellant Emma J. Linder filed a cross-complaint praying for a decree quieting her title to the whole tract of land as against all the plaintiffs. A decree was entered in favor of the plaintiff and the defendants appealed.

The tract herein described formerly belonged to James Wilson, who died in March, 1899, leaving surviving children as follows: William E. Wilson, Lizzie Everett, Charlotta Calhoun, Jesse Wilson and Emma J. Linder. He left a will whereby he devised the lands involved herein to Jesse Wilson, subject to the following restriction and proviso: "That my son Jesse shall have the home place [following with a description]. But should my son Jesse die without any wife or children, the property herein conveyed shall be equally divided between my other four children, or their heirs, share and share alike."

In *Wilson v. Linder*, 18 Ida. 438, 138 Am. St. 213, 110 Pac. 274, this court construed the foregoing provision of the will of James Wilson and held "that the devisee, Jesse Wilson, took a limited estate only, subject to the vesting of an absolute and fee simple title on his leaving surviving him at the time of his death a wife or child, and that the remaindermen had only an expectancy which might be vested in them as an absolute estate upon the contingency of Jesse Wilson dying without either wife or child." The cause was remanded and a new trial was had. The appellants herein took the position on the new trial that Emma J. Linder should have her title quieted on the ground, first, that Anthony V. Linder acquired a good title to the property by reason of tax sale certificates and deeds issued thereon, and, second, that Anthony V. Linder and Emma J. Linder, his wife, had been in the peaceable and adverse possession of the land under color of title for a period exceeding that prescribed by the statute of limitations.

During the years 1900 and 1901, Jesse Wilson leased the land to A. V. Linder and wife, and it appears that he lived most of the time during those two years with the Linder family. He failed to pay the taxes for the year 1900 and in July, 1901, the land was sold at tax sale for the 1900 taxes and was bid in by Anthony V. Linder. The taxes for the year 1901 were also allowed to go delinquent and in July, 1902, the land was again sold for taxes and was bid in by Anthony V. Linder. Tax deeds were subsequently taken on both certificates. On January 4, 1902, Jesse Wilson sold the land to Anthony V. Linder for the sum of $3,300, which sum was a fair cash value for the property at that time, and he thereupon executed a deed of conveyance in favor of Linder. This sale and transfer was made upon the theory and with the understanding that Jesse Wilson owned the fee simple title to the land, and that he was able to convey a like title and interest to a purchaser. This court held, however, in *Wilson v. Linder, supra,* that Jesse Wilson had in fact only a "limited or qualified fee in the place, subject to divestiture on his death without leaving surviving him a wife or child." It follows, therefore, that the deed from Jesse Wilson to Anthony V. Linder, while purporting upon its face to convey a fee simple title to the property, did in fact only convey what subsequently proved to be the mere life estate of Jesse Wilson, as he thereafter died without leaving a wife or child surviving him. This court accordingly held on the previous hearing that the respondents in this case at all times had a contingent remainder in this estate which could only be defeated upon the happening of the contingency named in the will of James Wilson, namely, the death of Jesse Wilson leaving surviving him a wife or child.

It is first contended by the appellants that they acquired a good title to this property by reason of the tax sales of 1901 and 1902, and the tax deeds subsequently issued thereon. They contend that they were under no obligation to pay these taxes for the benefit of the respondents, and that at the time of the purchase of this property at the tax sales they were mere tenants of Jesse Wilson, and that it was not inconsist-

ent with the terms of their lease or their obligation to the
landlord for them to purchase the property at tax sale. The
respondents, on the other hand, contend that appellants were
joint remaindermen in expectancy with the respondent Emma
J. Linder, and that she owed the same duty to her remainder-
men to protect the title that one cotenant owes to the other
cotenants to protect the common title for the common benefit
of all the cotenants. The rule is well established that "A
cotenant cannot take advantage of any defect in the common
title by purchasing an outstanding title or encumbrance and
assert it against his companions in interest. The purchase
is, notwithstanding his design to the contrary, for the common
benefit of all the cotenants. The legal title acquired by him
is held in trust for the others if they choose within a reason-
able time to claim the benefit of the purchase by contributing
or offering to contribute their proportion of the purchase
money." (Freeman on Cotenancy and Partition, 2d ed.,
sec. 154; *Stevenson v. Boyd*, 153 Cal. 630, 96 Pac. 284, 19 L.
R. A., N. S., 525; *Smith v. Goethe*, 159 Cal. 628, 115 Pac.
223; *Savage v. Bradley*, 149 Ala. 169, 123 Am. St. 30, 43 So.
20.)

We are inclined to the opinion that the rule above an-
nounced with reference to the duty of a cotenant to protect
the common title is applicable to the appellants here. It is
worthy of note, however, and we cannot pass it without
calling attention to that distinction, that here the respondents
and appellant Emma J. Linder were not in fact cotenants,
and yet the relative equitable relations which they sustained
to each other are very similar to that of cotenants. Here
the interest of the respondents and Emma J. Linder (who, by
the way, are the brothers and sisters of Jesse Wilson) was
a mere expectancy as remaindermen. They had no present
title or interest, and their expectancy itself was subject to
be cut off upon the happening of the condition named in
the will of James Wilson, that is, upon the death of Jesse
Wilson leaving surviving him either a wife or child. Their
expectancy as remaindermen, however, was dependent upon
and must flow from a common source of title. Conceding,

therefore, for the purposes of this case, that the Linders as joint remaindermen in expectancy with the respondents were under the duty and obligation of protecting the common title the same as if they were cotenants, there are still other reasons hereafter to be considered which, to our minds, are amply sufficient to defeat the respondents' right of recovery.

In the first place, respondents have never offered and do not in this proceeding offer to pay their share of taxes paid by the Linders at the tax sales of 1901 and 1902, covering the taxes for the years 1900 and 1901. In justification, however, of their failure to pay their share of these taxes, they invoke the rule which has been frequently announced, "that it is the duty of the life tenant and of those succeeding to his estate by purchase to pay the taxes on the property, and they cannot by payment acquire any adverse rights against the remainderman." (*Solis v. Williams,* 205 Mass. 350, 91 N. E. 148.) They contend that since the profits and income from the place were more than sufficient to pay the taxes, it was the duty of the Linders, who succeeded to the life estate of Jesse Wilson, to pay the taxes out of the income and receipts from the place. This contention is undoubtedly in conformity with the generally accepted rule of law. (*Defreese v. Lake,* 109 Mich. 429, 63 Am. St. 584, 67 N. W. 505, 32 L. R. A. 744; *Stevens v. Melcher,* 152 N. Y. 551, 46 N. E. 965; *Pike v. Wassell,* 94 U. S. 711, 24 L. ed. 307.) In this case, however, while the Linders were in possession of the place during the years 1900 and 1901, their possession was not that of purchasers of the interest of the life tenant, but as lessees. During these years they were Jesse Wilson's tenants and paid him the rent for the place. They cannot, therefore, be said to have received any rents, profits or benefits from the place out of which it was their duty to pay the taxes. If, as has been heretofore conceded, it was their duty as remaindermen in expectancy to protect the like expectancy of the other remaindermen, they should be compensated within a reasonable time for their outlay in so doing.

Mr. Freeman, in his work on Cotenancy and Partition, 2d ed., at sec. 156, says:

"The right of a cotenant to share in the benefit of a purchase of an outstanding claim is always dependent upon his having, within a reasonable time, elected to bear his portion of the expense necessarily incurred in the acquisition of the claim. . . . . The cotenant asking a court of equity to award him the benefit of a purchase must show reasonble diligence in making his election. Whatever delay he may have occasioned must be entirely consistent with perfect fair dealing on his part, and in no wise attributable to an effort to retain the advantages while he shirks the responsibilities of the new acquisition.". (*Stevenson v. Boyd*, 153 Cal. 630, 96 Pac. 285, 19 L. R. A., N. S., 525; reaffirmed and followed in *Smith v. Goethe*, 159 Cal. 628, 115 Pac. 223.)

It is to be remembered that equity does not oblige a cotenant to pay out his own money to protect the common title, but it rather permits him to do so, and when he has done so it converts him into a trustee and then lays an obligation upon the other cotenants to exercise reasonable diligence and do equity in contributing their shares by way of reimbursing him for his outlay, and a failure to do so within a reasonable time will be taken as an election on their part to allow him to take the benefit of the outlay and take the title he has acquired thereby for his individual use and benefit.

In *Mandeville v. Solomon*, 39 Cal. 125, the supreme court of California, speaking through Mr. Justice Wallace, in considering this question, said:

"Equity does not deny to a tenant in common the right to purchase in an outstanding or adverse claim to the common property. It, however, deals with the tenants after such a purchase is made. While it will not permit one of them to acquire such a title solely for his own benefit, or to the absolute exclusion of the other, it, at the same time, exacts of that other the exercise of reasonable diligence in making his election to participate in the benefit of the new acquisition; and having, upon its own principles of fair dealing, compelled the purchasing tenant to allow his cotenant this opportunity, the latter will not be permitted to equivocate or trifle with the position thus afforded him, or to make it a means of

speculation for himself, by delaying, until the rise of the land or some event yet in the future shall determine his course. Unless he make his election to participate within a reasonable time, and contribute, or offer to contribute, his ratio of the consideration actually paid, he will be deemed to have repudiated the transaction, and abandoned its benefits.'' (*Stevenson v. Boyd, supra; Smith v. Goethe, supra; Chapman v. Bank of California,* 97 Cal. 155, 31 Pac. 896; *Savage v. Bradley, supra.*)

Applying the foregoing rule to the facts of this case, it will be seen that since the Linders received no income or benefit from the land during the years 1900 and 1901, out of which it would be their duty to pay the taxes, it was therefore incumbent upon the respondents to make an offer of contribution within a reasonable time in order to be entitled to the benefits of the purchase made at the tax sales. This they failed to do. They had notice that the Linders had purchased this property at the tax sales and had paid all taxes for the years 1900 and 1901. They likewise had notice that the Linders purchased the estate from Jesse Wilson on January. 4, 1902, and *that they claimed and thought they were getting a fee simple title to the property.* Mrs. Linder testifies, and it is undisputed: ''Either in 1901 or 1902, along about October, I advised my brother and sister of the fact that we had bought the place in at tax sale. . . . . I told my brother Will sometime before February 12th, 1904, that we had paid for the place and had a deed and that we had a tax title deed also. I was talking with Mrs. Everett in 1902. I told her we had a deed from brother Jesse, and that if she wanted the place she would have to pay some of the taxes on it. I told my brothers and sisters that the taxes had gone delinquent and that Mr. Linder had bought them in. I did that for the reason that they were talking about such things. I told them that if they wanted to come in and pay their part of the taxes they could do it. I did not recognize that they had an interest in this land. I told them that the taxes had gone delinquent because they asked the question. I think

that was in the fall of 1902 when Mrs. Everett and I were talking about the taxes.'' They placed improvements on the property, paid the taxes and treated it as their own and occupied it as a home, and this was done with the full knowledge, and at least the passive consent, of the respondents.

Notwithstanding these facts the respondents allowed the matter to run from the time of the issuance of these tax sale certificates, in July, 1901, and July, 1902, and the execution of the deed from Jesse Wilson to Mrs. Linder in January, 1902, and took no action whatever and manifested no intention of making claim to the place or of contributing their share, until November, 1908, when this action was commenced, and at no time have they ever tendered their share of the taxes. In the meanwhile the land has greatly increased in value, and whereas it was not worth more than the amount the Linders paid for it ($3,300) in 1902, it was estimated to be of the value of about $24,000 at the time of the trial of this case. The period of their laches exceeds that of the statute of adverse possession of real estate. (Secs. 4038, 4039 and 4040, Rev. Codes.) Under all of the authorities this is too great a delay to be countenanced by a court of equity and more especially where the claimants have been at all times in a position to know the facts as they have in this case and yet have slept on their rights for so many years. No reason is shown for this delay.

It has been argued by counsel for respondents that the tax certificates issued to the Linders for the taxes for the years 1900 and 1901 and all right acquired under them was immediately merged in the deed executed by Jesse Wilson on January 4, 1902. This contention is made upon the principle of law that where legal and equitable titles both meet in the same person, the equitable merges in the legal title. This is true as a general proposition, but with many exceptions and qualifications, one of which is that there will be no merger where it will prove inequitable or to the disadvantage of the person who is honestly seeking to protect his rights. It is also subject to the restriction that the merger

takes place "only where the legal and equitable estates are coextensive and commensurate." (*Bowlin v. R. I. Hospital Trust Co.,* 31 R. I. 289, 140 Am. St. 758, 76 Atl. 348; *Hildreth v. Eliot,* 25 Mass. 293; *Wills v. Cooper,* 25 N. J. L. 137 (164); 16 Cyc. 669.) The lien given by the tax sale certificates which would ripen into absolute and fee simple titles if no redemption be made should not be merged into a legal title which subsequent events proved to be a mere life estate.

It has been held by many courts that "regardless of the question as to whether there has been a plea of the statute of limitations, a court of equity will refuse to entertain a suit brought after unreasonable delay," and this rule has been announced where the period constituting the laches is much shorter than that prescribed for the limitation of actions. (*Chapman v. Bank of California,* 97 Cal. 155, 31 Pac. 896; *Harris v. Hillegass,* 66 Cal. 79, 4 Pac. 987; *Bell v. Hudson,* 73 Cal. 285, 2 Am. St. 791, 14 Pac. 791. See, also, note to *Smith v. Thompson,* 54 Am. Dec. 130.)

While the deed from Jesse Wilson to Emma J. Linder, under which the Linders entered upon the land, only conferred a limited estate, still it constituted color of title and the Linders entered believing they had a fee simple title and their possession under the circumstances of the case became an adverse possession. (*Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784; *Little v. Crawford,* 13 Ida. 146, 88 Pac. 974; *Wright v. Mattison,* 59 U. S. 50, 15 L. ed. 280.)

Some suggestion was made on the oral argument that the tax certificate and deed were invalid on account of some irregularities, but so far as we have been able to examine them, in the light of any objection urged, they seem to meet the substantial requirements of the statute as the same has been construed by this court in *White Pine Co. v. Morey,* 19 Ida. 49, 112 Pac. 674; *Stewart v. White,* 19 Ida. 60, 112 Pac. 677, and *McGowan v. Elder,* 19 Ida. 153, 113 Pac. 102.

The judgment must be reversed and it is so ordered, and the cause is hereby remanded with direction to the trial court to enter judgment in favor of the appellant Emma J. Lin-

der as prayed for in her cross-complaint.   Costs awarded in favor of appellants.

Stewart, C. J., and Sullivan, J., concur.

Petition for rehearing denied.