[Civ. No. 4332. Second Appellate District, Division Two.—July 30, 1924.]

JOSEPHINE M. AKLEY, Plaintiff; LUCILLE C. BUEH-LER et al., Plaintiffs and Appellants, v. CHARLES N. BASSETT, Respondent.

[1] ESTATES—LIFE ESTATE—INTEREST OF REMAINDERMEN PRIOR TO DEATH OF LIFE TENANT—CHARACTER OF.—Children of a life tenant who would take the property in fee upon the termination of the life estate running in favor of the father had, prior to the death of their father, some sort of an interest in the property, even though it was contingent.

[2] QUIETING TITLE— ACTION BY LIFE TENANT — CLAIMS OF REMAINDERMEN — ABSENCE OF HOSTILITY. — A person who comes into court admitting that he has only a life estate or who is proven to have only such an estate may not compel the determination of the claims of remaindermen nor the conflicting claims of remaindermen as between themselves, for the interests of such person and the remaindermen are not hostile.

[3] ID.—SUCCESSION TO FEE—LIFE TENANT NOT INTERESTED.—A life tenant is not concerned with the validity or extent of the claims of those who may, upon his death, and after his estate is terminated, succeed to the fee.

[4] ID. — GRANTEE OF LIFE TENANT — ACTION AGAINST REMAINDERMEN—ESTABLISHMENT OF FEE IN GRANTEE—EFFECT OF JUDGMENT.—Where a grantee, relying upon the fee title apparently conveyed to him by his grantor, brought an action against the children of the grantor for the very purpose of having his title confirmed, and the defendants therein disputed his claim of title in fee, asserted that he held only a life estate, set up their own claim to the remainder, and specifically asked the court to have their claim thereto established, the judgment establishing the fee in such grantee could and did mean nothing else than that there was no remainder.

[5] ID.—DEFENDANT SETTING UP REMAINDER—CLAIM OF INTEREST IN PROPERTY.—When a defendant in a quiet title action sets up a remainder, contingent or otherwise, in himself, he thereby claims an interest in the property adverse to the plaintiff, within the meaning of the law.

[6] ID.—GRANT TO LEGAL HEIRS UPON DEATH OF LIFE TENANT—ACTION AGAINST REMAINDERMEN DURING LIFETIME OF LIFE TEN-

2. See 17 R. C. L. 625, 643; 23 R. C. L. 567, 591.
5. See 5 R. C. L. 646.
6 See 23 R. C. L. 584.

ANT—JUDGMENT—EFFECT OF.—Where a grant gave property to a life tenant and upon his decease unto his legal heirs according to the law of descent and distribution, there was no uncertainty as to the class of persons who held the remainder and would succeed to the title in fee upon the death of the life tenant, and the uncertainty as to the members of this class, or as to the particular individuals who would compose the class of persons thus designated as heirs, is no sufficient reason for holding that the court in an action brought by a grantee of the life tenant during the lifetime of said life tenant against the children of the latter could not adjudicate upon the claims of said children who alleged that they did fall within that class and pleaded their claims as such.

[7] ID.—REMAINDERS—INTERESTS—PARTIES—JUDGMENTS.—An action to quiet title brought by a grantee of a life tenant during the lifetime of the life tenant against the latter's children, who pleaded their claims as remaindermen, in so far as such children are concerned, falls within the scope of the well-established principle in equity that a contingent interest in real estate is bound when the court has before it all the parties that can be brought before it, and it acts upon the property according to the rights that appear, there being no fraud or collusion.

[8] ID.—EQUITY—POSSESSION.—The action to quiet title is equitable and is governed by equitable principles, and the remedy created by section 738 of the Code of Civil Procedure is equitable where the defendant is not in possession of the land.

[9] ID.—INTERESTS OF REMAINDERMEN—ADJUDICATION OF IN QUIET TITLE ACTION—JURISDICTION.—Under section 738 of the Code of Civil Procedure, which provides that "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim," interests or rights of remaindermen arising from a grant giving property to a life tenant and upon his decease unto his legal heirs according to the law of descent and distribution, which interests or rights are pleaded by such remaindermen as parties defendant, can be inquired into and passed upon in a quiet title action.

[10] ID.—WORDS AND PHRASES.—The words "claims an estate or interest" are used in a broad sense, and are not technical in their meaning, and were evidently intended to embrace every species of adverse claim set up by a party out of possession, whereby the plaintiff's enjoyment of his property may be interfered with.

7. See 5 R. C. L. 640; 10 R. C. L. 347; 15 R. C. L. 993.

8. See 5 R. C. L. 647.

10. Contingent remainder as "interest" in real estate, note, 1912B, 525. See, also, 5 R. C. L. 646.

[11] ID. — PARTITION — ACCOUNTING — JUDGMENTS — RES JUDICATA — FINDING—DEEDS.—In an action by remaindermen under a deed granting property to a life tenant and upon his decease unto his legal heirs according to the law of descent, to partition said property, to quiet title to their several interests, and for an accounting against the successor of a grantee of said life tenant, a finding that a judgment in a prior action to quiet title to said property brought by said grantee against said remaindermen establishing title in fee in said grantee is *res adjudicata*, and, therefore, a bar to the instant action, was correct, even though the judgment in said prior action to quiet title was based upon an erroneous construction of the deed from said life tenant to said grantee.

[12] RES JUDICATA—ERRONEOUS JUDGMENT.—A judgment, though erroneous, is none the less a bar to a second action between the same parties or their privies with respect to the same subject matter.

[13] ID.—DECISION OF POINT REGARDLESS OF CORRECTNESS.—In passing upon the plea of *res adjudicata*, the question is not whether the court decided the point rightly or wrongly, but the question is, did the court decide the point, and is the decision final.

[14] QUIETING TITLE—LACHES—FINDINGS.—In such partition action, fairly construed, a finding that the laches of one of the plaintiffs in bringing the action was prejudicial to the defendant was itself necessarily a finding that the laches of the other plaintiffs as well as that particular plaintiff was prejudicial, and particularly when taken in connection with other findings.

[15] FINDINGS—CONSTRUCTION—JUDGMENTS.—Findings must not only be construed together, but must be so construed, if possible, as to support the judgment rather than destroy it; they are to be liberally construed, and their language should not be so strained by the courts as to make out a case of conflict; they cannot be altogether detached from each other and considered piecemeal, and if they be doubtful or obscure reference may be had to the context for the purpose of ascertaining the meaning.

[16] ID. — INFERENCES — JUDGMENTS — APPEAL. — Whenever from the facts found other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court, and upon an appeal from that judgment the appellate court will not draw from those facts any inference of fact contrary to that which may have been drawn by the trial court for the purpose of rendering judgment.

12. See 15 Cal. Jur. 102; 15 R. C. L. 957.
15. See 14 Cal. Jur. 979; 2 R. C. L. 203.
16. See 2 Cal. Jur. 870; 15 R. C. L. 877.

[17] LACHES — DELAY RESULTING IN DISADVANTAGE TO ANOTHER. — Laches in legal significance is not mere delay, but delay that works to the disadvantage of another.

[18] ID. — WHEN DOCTRINE BARS ACTION. — The doctrine of laches bars an action where a party remains passive while an adverse claimant incurs risks, enters into obligations or makes outlays in improving property, paying taxes thereon, or otherwise in reliance on his own right.

[19] ID.—CHANGES OCCURRING IN SUBJECT MATTER.—Changes occurring in the subject matter, or in the position of the parties relative thereto, resulting in the impossibility of placing them *in statu quo*, or a marked appreciation in the value of the property, when rights might have been asserted before such change and the granting of relief would in consequence thereof work inequity, are ordinarily fatal to a plaintiff's case.

[20] QUIETING TITLE—LACHES—EVIDENCE.—In such action, the granting of relief sought by plaintiffs would be inequitable in view of the evidence relating to laches of the plaintiffs.

[21] LACHES—EVIDENCE.—Each case as it arises, involving the question of laches, must necessarily be determined by its own circumstances.

[22] QUIETING TITLE—EVIDENCE—LACHES—CHANGE IN SUBJECT MATTER.—In such action, where in the course of unexplained and inexcusable delay of plaintiffs for a period of seventeen years, expenditures running into many many thousands of dollars were made by defendant for improvements of a substantial and costly nature, materially improving and changing the character of the property itself, and necessarily greatly increasing its value and availability, and resulting in its transformation from nonproductive property into a highly improved and profitable walnut grove, and by reason of energy and business ability of the defendant, he has effected the sale of adjoining lands comprising more than half of the property to which he fell heir, obtaining therefrom rents, issues, and profits which may amount to one million dollars, it would be impossible after the lapse of such period of time to place the parties *in statu quo;* and the laches of the plaintiffs, as found by the trial court and as established by the evidence, is prejudicial and is a bar to their action.

[23] ID.—ADVERSE POSSESSION—FINDING—EVIDENCE.—In such action, the evidence was sufficient to support the finding that the posses-

17. See 10 Cal. Jur. 520, 528; 10 R. C. L. 396.
18. See 10 Cal. Jur. 530.
19. See 10 Cal. Jur. 531; 10 R. C. L. 400.
20. See 5 R. C. L. 668.
21. See 10 Cal. Jur. 526.
23. See 1 Cal. Jur. 631; 1 R. C. L. 692.

sion by defendant of the property in question was adverse after the life estate given to the father of plaintiffs terminated.

[24] ID. — COTENANCY — POSSESSION. — In such action, the contention that owing to the status of the parties as cotenants the possession of defendant was not of such a character as to be adverse to plaintiffs as his cotenants, cannot be sustained.

[25] ID.—DECLARATION OF LAW BY SUPREME COURT—BINDING EFFECT OF.—A declaration of the law by the supreme court is the law of this jurisdiction, binding upon every inferior court in the state unless and until it be reversed or overruled by the supreme court.

[26] ID.—PREVIOUS DECISION OF QUESTIONS—ESTABLISHMENT OF RULE OF LAW—DIFFERENCE IN PARTIES.—In such action, where certain questions raised herein, under identical circumstances, except as to the parties concerned, were passed upon and decided by the supreme court on another appeal adversely to appellant's contention, the rule of law is thereby established, although the parties are different.

---

(1) 21 C. J., p. 992, sec. 146.   (2) 32 Cyc., p. 1343.   (3) 32 Cyc., p. 1343.   (4) 32 Cyc., p. 1378 (Anno.).   (5) 32 Cyc., p. 1343. (6) 32 Cyc., p. 1374.   (7) 34 C. J., pp. 1000, 1001, sec. 1421.   (8) 32 Cyc., pp. 1305, 1306.   (9) 32 Cyc., p. 1343.   (10) 32 Cyc., p. 1342. (11) 32 Cyc., p. 1384.   (12) 34 C. J., p. 769, sec. 1184.   (13) 34 C. J., p. 901, sec. 1311.   (14) 21 C. J., p. 584, sec. 720.   (15) 4 C. J., p. 787, sec. 2740; 38 Cyc., p. 1966.   (16) 4 C. J., pp. 778, 779, sec. 2728.   (17) 21 C. J., p. 211, sec. 211, pp. 221, 223, sec. 219. (18) 21 C. J., p. 232, sec. 226.   (19) 21 C. J., p. 231, sec. 225, p. 233, sec. 227.   (20) 32 Cyc., p. 1345.   (21) 21 C. J., p. 217, sec. 217.   (22) 21 C. J., p. 231, sec. 225, p. 232, sec. 226, p. 233, sec. 227; 32 Cyc., p. 1345.   (23) 2 C. J., p. 276, sec. 621; 21 C. J., p. 976, sec. 125.   (24) 21 C. J., p. 976, sec. 125.   (25) 15 C. J., p. 920, sec. 308.   (26) 15 C. J., p. 920, sec. 308.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

Leon R. Yankwich for Appellants.

Millard Patterson, Donald Barker, Wheaton A. Gray and Hunsaker, Britt & Cosgrove for Respondent.

---

24.  See 1 Cal. Jur. 537, 539, 549; 1 R. C. L. 741.
25.  See 7 Cal. Jur. 628; 7 R. C. L. 1001.

HEWITT, J., *pro tem.*—Plaintiffs brought this action for a partition of certain real property, to quiet title to the several undivided interests therein claimed by them, and for an accounting. They are the surviving children of Joseph M. Workman and Josephine Workman, his wife. The defendant Ida L. Kelso, now the wife of Fred Kelso, was formerly the wife of George Workman, a deceased son of Joseph M. Workman, who died in 1904. The defendant Charles N. Bassett is the son and sole heir at law of O. T. Bassett, deceased. As originally instituted, the action involved a tract of land in Los Angeles County, comprising about 814 acres in the Rancho La Puente known as the Workman ranch. Besides the said Charles N. Bassett and Ida L. Kelso, a number of other persons, purchasers or the successors in interest of the purchasers from the defendant Bassett or his father, O. T. Bassett, of small parcels of the entire tract, were also made parties defendant. The plaintiffs, at the trial in the court below, abandoned the action as against all defendants other than Charles N. Bassett and Ida L. Kelso, and stipulated judgments in their favor were made and entered, thus reducing the area in controversy to 265 acres. Amended pleadings were filed and the cause was tried on the issues made by the amended complaint, hereinafter referred to as the complaint, and the answers thereto of the defendants Bassett and Kelso. The latter, though claiming an interest in the property of the same character as the plaintiffs, by virtue of her succession to the interest of her former husband, George Workman, did not join in bringing the action.

The plaintiffs allege that they are each seised of a two-eighteenths interest in the property and that the defendants Bassett and Kelso are the owners respectively of a seven-eighteenths and one-eighteenth interest. They also allege that defendant Bassett had collected and kept large sums of money arising from the rents, issues, and profits of the property, amounting to more than $1,000,000, and has not accounted therefor; wherefore they pray that the respective interests of the parties be ascertained and determined and that an accounting be had. In her answer the defendant Kelso asks for like affirmative relief. Defendant Bassett denies the allegations of the plaintiffs and of the defendant

Kelso and avers that he is the sole owner of the property, except such portions as have been conveyed to others. He admits that he has received the rents, issues and profits of the property, the exact amount of which he states he does not know, but that they "are not in excess of $1,000,000.00," and that he will ascertain and disclose the true amount thereof in the event the court determines that he shall account therefor. He alleges that he had expended large sums of money in improving and cultivating the property, and in the payment of taxes, etc. In addition to adverse possession of the property by his father and himself from 1895 to 1918, defendant Bassett also sets up several special defenses in bar of the action, the most material of which are the statute of limitations and a certain judgment in the case of *Bassett* v. *Thornton et al.,* rendered by the superior court of Los Angeles County in 1895, pleaded as *res adjudicata.* Upon the issues as thus made up, judgment was rendered November 22, 1920, and entered November 30, 1920, in favor of the defendant Bassett, adjudging that he is the owner of the property in fee, and that neither the plaintiffs nor the defendant Kelso had any right, title or interest therein.

Following the entry of this judgment, the plaintiff Josephine M. Akley moved the court to vacate the judgment and to enter another and different judgment as to her. The other plaintiffs also made a similar motion on their own behalf. The explanation for the making of two motions is that the trial court found that jurisdiction over Mrs. Akley had not been obtained in the case of *Bassett* v. *Thornton,* owing to defective service of summons upon her, from which the court concluded that she was not bound by the judgment therein, notwithstanding which the decision was adverse to her on other grounds, erroneously as she contended. No such question was or could be raised by the other plaintiffs. These motions were heard by a different judge than the one who had tried the cause. An order was made granting the motion of the plaintiff Akley, and denying the motion of the other plaintiffs; whereupon amended and corrected conclusions of law were signed and filed and a second judgment was entered therein, adjudging that the plaintiff Josephine M. Akley and the defendant Charles N. Bassett were the owners of one-ninth and eight-ninths interests respectively in the property, and that the other plaintiffs and defendant

Ida L. Kelso had no interest therein. A partition of the property was decreed, and judgment was given in favor of the plaintiff Akley and against the defendant Bassett in the sum of $109,302.

The defendant Bassett appealed from that part of the order above mentioned granting the plaintiff Akley's said motion, and from the said second judgment. The other plaintiffs took a separate appeal from that part of the aforesaid order which denied their motion, and also from both the first and second judgments. Upon the appeal of the defendant Bassett, which we will refer to herein as the Akley case, it was held that the lower court was in error in ordering and substituting another and different judgment in the cause. (See report of the case of *Akley* v. *Bassett*, 189 Cal. 625 [209 Pac. 576].) The order vacating the original judgment and directing amended conclusions of law was reversed, as was also the second judgment entered in pursuance thereof, and the original conclusions of law and judgment were thus left in force. The same case on a more complete record now comes before us on the aforementioned separate appeal of the other plaintiffs, Lucille C. Buehler, Agnes Workman Stoll, Mary C. Knight, and William J. Workman. The appeal in the Akley case was taken on a bill of exceptions containing only the judgment-roll, while here there is a bill of exceptions which contains the evidence and record relating to the first judgment, the motion referred to and the order denying the same. The appellants ask for a reversal of both judgments on the ground that the evidence does not sustain certain of the findings, which are also claimed to be contrary to law. While in the Akley case the findings only were before the court, an examination of the evidence satisfies us that the probative facts upon which the court made findings—the court made findings upon certain probative facts—were correctly found by the court. The attack here is mainly directed to the construction which the trial court placed upon the probative facts. The findings are full and comprehensive, and set forth in detail the history of the title to the property and the acts of the parties with relation thereto. The particular findings objected to are those which find that this action is barred by the judgment in *Bassett* v. *Thornton*, and that the same is *res adjudicata;* that the agreement for the dismissal of their appeal in that case

worked an estoppel upon appellants; that the defendant and respondent Bassett has acquired prescriptive title to the property by adverse possession and that the action herein is barred by laches. The further general objection is made to the series of findings which deal with the deraignment of defendant Bassett's title in that they show Joseph M. Workman only to have had a life estate in the property, which was therefore the only estate he conveyed to O. T. Bassett, notwithstanding which the court found that defendant Bassett, as the successor in interest of O. T. Bassett, is the owner in fee of the property, thus implying, contrary to law, so it is claimed, that defendant Bassett could base a claim of title in fee on such a foundation.

As found by the trial court and as shown by the evidence, by a deed dated October 11, 1870, William Workman and wife conveyed the property described in the complaint herein to their son Joseph M. Workman "to have and to hold . . . to and for for his use and benefit for and during the term of his natural life; and upon the decease of him . . . unto his legal heirs according to the laws of California relating to descents and distribution, and their heirs and assigns, to and for their sole and only use, benefit and behoof, in fee absolute forever; but not to the testamentary heirs and devisees" of the said Joseph M. Workman. This deed was recorded March 27, 1873. About twenty-five years afterward the grantee in this deed and his wife, the parents and the plaintiffs, conveyed the property to O. T. Bassett, apparently in fee, by a grant deed dated March 1, 1895. O. T. Bassett immediately made entry and took possession. Within a few weeks thereafter O. T. Bassett brought an action in the superior court of Los Angeles County to quiet his title to the property against the children of Joseph M. Workman, the same persons who are the plaintiffs here, and George Workman, now deceased, whose former wife is the defendant Ida L. Kelso. This s the case referred to in the pleadings and findings as *Bassett* v. *Thornton et al.* All of the defendants therein appeared and answered, and three of them being minors, including Josephine M. Workman, now Josephine M. Akley, did so by their guardian *ad litem*. Judgment was rendered in favor of the plaintiff and entered June 25, 1895. An appeal from this judgment was subsequently dismissed. O. T. Bassett died January 1, 1898, leaving his

son, defendant and respondent Charles N. Bassett, as his sole heir at law. Administration was had upon O. T. Bassett's estate and the property in question was by decree dated October 20, 1900, distributed to the son. The latter being then a minor, a guardianship of his estate ensued, and upon attaining his majority in 1902, he came into full possession and occupancy of the property in succession to his father, and under the same title, fortified by the decree in *Bassett* v. *Thornton.*

Joseph M. Workman died March 13, 1901. Appellants took no steps to assert or recover any interest in the property in question until June 24, 1918, when they instituted this action. The foundation of their claim is that their father only had a life estate in the property, that the same was the only interest which he did or could convey to O. T. Bassett, and that upon their father's death they, as his legal heirs, succeeded as remaindermen to the fee as tenants in common, except as to a six-eighteenths interest, which, presumably, was the interest of their mother which had passed to the Bassetts, father and son.

The decision of the superior court in the Akley case was against the respondent therein, Mrs. Akley, and in favor of the appellant there (respondent here) on the grounds that the latter had been in the adverse possession of the property for more than the statutory period before the commencement of this action, which had ripened into a prescriptive title, and that the long delay of Mrs. Akley in bringing this action constituted prejudicial laches, which consequently was a bar thereto. From the above outline of that case and the appeal now before us, it is at once apparent that in all respects save only as to the defective service upon Mrs. Akley of summons in *Bassett* v. *Thornton,* and the issue of *res adjudicata* which was thereby eliminated from that case, the facts in the Akley case are necessarily identical with the facts here, the difference being that the questions now to be decided and arising thereon, are directed to the sufficiency of the evidence to support the findings and the conclusions which the trial court drew therefrom.

The decision herein by the trial court in favor of the respondent and against the appellants, as indicated by the aforesaid findings to which they object, was rendered on three grounds: First, that the judgment in *Bassett* v. *Thorn-*

*ton* was *res adjudicata,* and a bar to this action; second, that
the respondent had acquired a title by prescription to the
property under adverse possession for more than five years
prior to the commencement of the action, and that appel-
lants could not recover because they were not seised or pos-
sessed of the property within five years prior thereto; and
third, that the action was barred by the prejudicial laches
of the appellants. Therefore, it is obvious, in order to pre-
vail on this appeal here, the appellants must show that all
of these conclusions of the trial court were erroneus;
whereas, it is only incumbent upon the respondent to estab-
lish the validity of any one of them. If any one of these
grounds is well founded the judgment must be affirmed.

Since the effect of the judgment in *Bassett* v. *Thornton*
upon the asserted rights of these appellants was not de-
termined in the Akley case, we will first address ourselves
to the consideration of that question.

The respondent, in his answer, after reciting the identity
of the parties defendant to that action with the appellants
here, his own privity with the plaintiff therein, the issues
made by the pleadings and the character of the judgment
rendered, pleaded such judgment as *res adjudicata* and a
bar to this action as follows: ''That the matters and things
and issues relating to the title of said land, the subject of
this action, were fully and completely adjudicated in the
said action heretofore mentioned between the plaintiff herein
and the ancestor and predecessor in interest of this answer-
ing defendant, and said judgment is pleaded herein as *res
adjudicata.*'' The trial court found these allegations to be
true, ''except that the said Josephine M. Akley was not
bound by the judgment in any respect.'' The grounds upon
which this finding is attacked may be resolved into the gen-
eral statement that the nature of the action to quiet title
and of contingent remainders in real property is such that
the rights of the holders of such remainders cannot be adju-
dicated in that form of action, and that therefore the judg-
ment in *Bassett* v. *Thornton* was void in that the court had
no jurisdiction over the subject matter.

When the action of *Bassett* v. *Thornton et al.* was brought
in 1895, the father of the appellants was still living and he
did not die until about six years after the judgment therein
was rendered. A short time prior thereto Joseph M. Work-

man and his wife had executed the deed which purported on
its face to convey the property in fee to O. T. Bassett. It
appears from the evidence here that there was "some neigh-
borhood talk about something being wrong with the title";
but however that may be, the elder Bassett, evidently real-
izing the necessity of having any question concerning his title
set at rest, and assuming to act under authority of section
738 of the Code of Civil Procedure, made the five children
of his grantor the parties defendant to his action. The com-
plaint was in the ordinary form used in an action to quiet
title, it alleged that he was the owner of the property and
that it was "the same as described in the deed from William
Workman to Joseph M. Workman, dated October 11, 1870,"
and made reference to the deed for further particulars. In
their answer the defendants denied that the plaintiff was
the owner in fee simple, of the property "or any estate
therein except an estate for the life of one Joseph M. Work-
man"; that subject to such life estate "the heirs of said
Joseph M. Workman are the owners in fee of said property
and these defendants are the children of said Joseph M.
Workman, and those of them surviving at his death will be
the owners of said property in fee." Their prayer was for
a determination that they were the owners of the property
subject to the life estate. The court found that the deed to
Joseph M. Workman had been made, executed, and delivered
prior to January 1, 1873, that Joseph M. Workman and his
wife executed the deed dated February 25, 1895, conveying
to the plaintiff all their right, title and interest in the prop-
erty in fee simple, and that the defendants were the children
of Joseph M. Workman. The conclusion was that the plain-
tiff was the owner of the property in fee simple, and that
the defendant had no right, title or interest therein. Judg-
ment was rendered accordingly and entered June 26, 1895,
barring the defendants from asserting any claim whatever
to the property adverse to plaintiff. It thus appears that
these appellants had full knowledge at the time of the con-
dition of the title to this property, of the extent and basis of
O. T. Bassett's claim, and of the character of their own.
The issues in the case were clear, and the decision turned
entirely upon the construction of the deed from William
Workman to their father. The court having found that the
deed was delivered prior to January 1, 1873, obviously con-

cluded that it fell within the rule in Shelley's Case, which was in force in this state until January 1, 1873, when it was abolished by section 779 of the Civil Code (*Gordon* v. *Cadwalader*, 164 Cal. 509 [130 Pac. 18], and cases therein cited).

In the Akley case, in response to the contention of the appellant there (respondent here) that the judgment in *Bassett* v. *Thornton* was correct, occasion was taken to construe the deed in question. It was there said: "We are satisfied that the terms of the instrument remove it from the application of the rule in Shelley's Case, even though it had been delivered prior to January 1, 1873. This language clearly indicates an intention on the part of the grantor to limit a life estate in said Joseph M. Workman and to vest a full estate in his legal heirs, according to the laws of the state of California respecting the descents and distribution (*Montgomery* v. *Sturdivant*, 41 Cal. 290, 298; *Gordon* v. *Cadwalader*, 164 Cal. 509, 513 [130 Pac. 18]). O. T. Bassett took no greater interest in the property than his grantor Joseph M. Workman had. It follows, therefore, that the deed from Joseph M. Workman to appellant's immediate predecessor [O. T. Bassett] did not serve to divest respondent of her future interest in the property, which vested upon the death of her father, on March 13, 1901." It was thus finally determined some twenty-seven years after the judgment in *Bassett* v. *Thornton* was rendered that the case was wrongly decided on both the law and the facts, and that the appellants were in fact just what they then claimed to be, namely, remaindermen, and that O. T. Bassett had nothing more than a life estate in the property. Pivoted upon this as a foundation, appellants contend that said judgment is void because the court had no jurisdiction to pass upon their claims as the holders of contingent remainders in the property, and that as such they had no present or vested interest therein that could be adjudicated in a quiet title suit at the instance of a life tenant, or even claimed therein.

[1] Prior to the death of their father the appellants had some sort of an interest in the property, even though it was contingent. They were members, at that time, of a designated class of persons who would take the property in fee upon the falling in of the life estate. It should also be observed that O. T. Bassett did not bring the action of *Bassett*

v. *Thornton* in the attitude of a life tenant, and it only confuses the issue to treat that case in any such light. [2] It is true that a person who comes into court admitting that he has only a life estate or who is proven to have only such an estate may not compel the determination of the claims of remaindermen nor the conflicting claims of remaindermen as between themselves, for the interests of such person and the remaindermen are not hostile. [3] A life tenant is not concerned with the validity or extent of the claims of those who may, upon his death, and after his estate is terminated, succeed to the fee (*Onderdonk* v. *Mott,* 34 Barb. (N. Y.) 106; *Collins* v. *Collins,* 19 Ohio St. 468). Cases so holding are not in point here because *Bassett* v. *Thornton* was not that sort of a case. [4] Relying upon the fee title apparently conveyed to him by his grantor, O. T. Bassett brought his action for the very purpose of having his title confirmed. The defendants therein disputed plaintiff's claim of title in fee, asserted that he held only a life estate, set up their own claim to the remainder, and specifically asked the court to have their claim thereto established. The judgment for plaintiff could and did mean nothing else than that there was no remainder.

[5] But, aside from that, we are of the opinion that when a defendant in a quiet title action sets up a remainder, contingent or otherwise, in himself, he thereby claims an *interest* in the property adverse to the plaintiff, within the meaning of the law. In *Barnett* v. *Barnett,* 104 Cal. 298 [37 Pac. 1049], a case somewhat analogous to *Bassett* v. *Thornton,* section 779 of the Civil Code was construed, and it was said that a remainder to the "heirs" of a life tenant, although not capable of immediate enjoyment, is nevertheless "an estate in the property capable of being transferred in the same manner as a present interest." It was said in *County of Los Angeles* v. *Winans,* 13 Cal. App. 234 [109 Pac. 640], that where property is conveyed to a mother for life, with remainder "to the heirs of her body," though the remainder is contingent the "interests of unborn grandchildren" are not mere possibilities, such as the expectancy of an heir apparent. In the next succeeding case of the same title, reported in 13 Cal. App., at page 257 [109 Pac. 650], the court held that the rights of the children to such a contingent remainder "were not mere possibilities, such as are

covered by the provisions of section 700 (of the Civil Code), but estates in fee to vest in the future.'' In that case it appeared that in a previous quiet title action to which the life tenant and her children had been made parties defendant, a judgment had been rendered against them which they sought to avoid therein. The court, however, in referring to such action, observed that ''the contention of the appellants that the action can not be maintained against the children because of their contingent remainder finds full answer in *Barnett* v. *Barnett*, 104 Cal. 298, 301 [37 Pac. 1049],'' and that the defendants were concluded by the findings therein against them. Again, in *Gray* v. *Union Trust Co.*, 171 Cal. 637 [154 Pac. 306], the court said that a trust providing that in the absence of a will the property should go to and vest in the heirs at law of the trustor according to the laws of succession created an alienable estate and interest in the remainder, and it was immaterial whether they be regarded as contingent or vested. Upon the authority of these cases we conclude that the claim pleaded by the defendants in *Bassett* v. *Thornton* was an interest in the property.

[6] But it is argued, further, that the appellants were not ''the heirs'' of Joseph M. Workman, who was alive when they filed their answer in that case, since no one can be the heir of a person living; therefore, not being such heirs at the time, they neither had nor could make any adverse claim to the property. This proposition also is utterly unsound, and if accepted would defeat one of the very purposes for which the action to quiet title was devised. Of course, their father might have survived them all. Upon his death others might have been his legal heirs, or the law of descent and distribution might have been changed before he died; but the possible happening of any such contingencies is immaterial. The remainder here was thus specified in the grant; ''and upon the decease of him (i. e., Joseph M. Workman) . . . unto his legal heirs,'' etc. There was thus no uncertainty as to the class of persons who held the remainder and would succeed to the title in fee upon the death of the life tenant. The uncertainty as to the members of this class, or as to the particular individuals who would compose the class of persons thus designated as heirs, is no sufficient reason for holding that the court could not adjudicate upon the claim of those who alleged that they did fall within that class and

pleaded their claims as such. Section 779 of the Civil Code, so far as material here, provides that "when a remainder is limited to the heirs of . . . a person to whom a life estate in the same property is given, the persons who, on the termination of the life estate, are the successors . . . of the owner for life, are entitled to take by virtue of the remainder so limited to them, and not as mere successors of the owner for life." In *Barnett* v. *Barnett, supra,* it was said that "by section 779 of the Civil Code the term 'heirs' is changed from a word of limitation to one of purchase and becomes a specific designation of a class which will have the right to the property upon the termination of the life estate. Upon that event they take the property, not by descent or as successors of the plaintiff (i. e., the grantee), but by virtue of the remainder which was created for them at the execution of the deed to him." In *County of Los Angeles* v. *Winans,* 13 Cal. App. 257 [109 Pac. 650], the court also held as follows: "To construe the words 'heirs of her body' to mean 'in the capacity of heirs' would be to restore the rule in Shelley's Case and repeal by construction the express provisions of section 779," and that "these words will be considered as words of description and identity, and not of capacity, such being the effect of the section." It is not suggested that there are or ever were any persons interested in this remainder other than the children of Joseph M. Workman, appellants here, and the defendant Mrs. Kelso who is in privity with a deceased child, and they and Mrs. Kelso's predecessor are the same persons whose claim to the property in remainder was based upon the express ground that upon the life tenant's death they would be his heirs.

[7] We think that *Bassett* v. *Thornton,* in so far as the parties defendant thereto are concerned, falls within the scope of the well-established principle in equity that a contingent interest in real estate is bound when the court has before it all the parties that can be brought before it, and it acts upon the property according to the rights that appear, there being no fraud or collusion (*Miller* v. *Texas etc. Ry. Co.,* 132 U. S. 662 [33 L. Ed. 487, 10 Sup. Ct. Rep. 206, see, also, Rose's U. S. Notes]). [8] The action to quiet title is equitable and is governed by equitable principles (*Polack* v. *Gurnee,* 66 Cal. 267 [5 Pac. 229, 610]; *Benson* v. *Shotwell,* 87 Cal. 49 [25 Pac. 249, 681]), and the remedy created by

section 738 of the Code of Civil Procedure is equitable where the defendant is not in possession of the land. (5 Pomeroy's Equity Jurisprudence, 2d ed., sec. 2158.) In *Mathews* v. *Lightner*, 85 Minn. 333 [89 Am. St. Rep. 558, 88 N. W. 992], there existed a situation very similar to the one here presented. It was urged therein that a previous judgment in an inferior court in a quiet title action brought before the life tenant died was not binding on remaindermen who were parties thereto, because the remainder was contingent, and hence until the death of the life tenant it would be uncertain who would be entitled to the remainder. (Precisely the same contention is made here with regard to the judgment in *Bassett* v. *Thornton.*) The point was thus disposed of: "Conceding . . . that the deed . . . created a contingent remainder . . . still the district court had power to acquire jurisdiction over all parties interested in the contingent remainder and by its decree to determine their rights. This conclusion necessarily follows from the equity doctrine that the general rule that only those who are parties to a suit are affected by the decree is subject to the exception that, where the subject matter of the action is the determination of the title to real estate, if all parties are brought before the court that can be brought before it, and it acts on the property according to the rights that appear, there being no fraud or collusion, its decision is final as to the state of the title, and binds all contingent interests in the real estate. . . . The rule is based on necessity, for it would be an intolerable injustice if the owner of real estate could not have this title quieted when there was a claim of an outstanding contingent remainder which might possibly vest in persons not then in being."

Under the decisions cited, it is clear that the claim made by the defendants in *Bassett* v. *Thornton* was a claim to an actual interest in the property, that they were all the parties that could be brought before the court, and that their claim was adverse to the plaintiff therein. A determination having been made thereon, which long since became final, it follows that the judgment there rendered is binding upon the appellants unless there is merit otherwise in their further contention that our action to quiet title is so limited in scope as to preclude adjudication upon remainders of the character asserted in that case.

[9]   We think the complete answer to such a contention
is found in the language of section 738 of the Code of Civil
Procedure and the construction that has been repeatedly
placed thereon.   So far as material here the section referred
to reads as follows: ''An action may be brought by any
person against another who claims an estate or interest in
real property adverse to him, for the purpose of determining
such adverse claim.''   This is identical with section 264 of
the Practice Act, which preceded the code.   We quote from
*Peterson* v. *Gibbs,* 147 Cal. 1, 5 [109 Am. St. Rep. 107, 81
Pac. 121, 122], as follows: ''Such an action is brought as
authorized by the statute for the purpose of determining any
adverse claim that may be asserted therein by defendant to
the land in controversy and this does not mean that the court
is simply to ascertain as against the plaintiff shown to have
a legal interest whether such defendant has some interest, but
also that the court shall declare and define the interest held
by the defendant, if any, so that the plaintiff may have a
decree finally adjudicating the extent of his own interest in
the property in controversy.   The object of the action is to
finally settle and determine as between the parties all con-
flicting claims in controversy, and to declare to each such
interest therein as he may be entitled to.''   The nature and
object of the action to quiet title have been often defined
in most comprehensive terms.   The statement has been made
that it embraces every sort of a claim whereby the plaintiff
might be deprived of his property or his title clouded or its
value depreciated.   (*Withers* v. *Jacks,* 79 Cal. 297 [12 Am.
St. Rep. 143, 21 Pac. 824].)   And the rule has been even
more broadly stated, viz., that the action may be maintained
by the owner of property to determine any adverse claim
whatever.   (*Castro* v. *Barry,* 79 Cal. 443 [21 Pac. 946].)
The action may be brought against any person claiming an
adverse interest of whatever kind.   (5 Pomeroy's Equity
Jurisprudence, 2d ed., sec. 2161.)   It is unnecessary to mul-
tiply citations upon this subject, for while they serve to
illustrate the application of the rule to various sorts of
claims, they are all to the same effect.   (*Stoddart* v. *Burge,*
53 Cal. 394; *People* v. *Center,* 66 Cal. 551 [5 Pac. 263, 6
Pac. 481] ; *Pennie* v. *Hildreth,* 81 Cal. 127 [22 Pac. 398] ;
*Bulwer C. S. M. Co.* v. *Standard S. M. Co.,* 83 Cal. 589 [23
Pac. 1102] ; *Landregan* v. *Peppin,* 94 Cal. 465 [29 Pac. 771].)

[10]   As was said by the supreme court of Utah, "the words 'claims an estate or interest' are used in a broad sense, and are not technical in their meaning, and were evidently intended to embrace every species of adverse claim set up by a party out of possession, whereby the plaintiff's enjoyment of his property may be interfered with." (*Goldberg* v. *Taylor*, 2 Utah, 491.) If the employment of the action to quiet title against remainders, contingent or otherwise, is not directly or by reasonable implication authorized by those very comprehensive definitions of its scope, we think such use is specifically upheld in two early cases in this state. In *Head* v. *Fordyce*, 17 Cal. 149, it was said: "The statute giving this right of action to the party in possession does not confine the remedy to the case of an adverse claimant setting up a legal title, or even an equitable title; but the act intended to embrace every description of claim whereby the plaintiff might be deprived of his property, or his title clouded, or its value depreciated, or whereby the plaintiff might be inconvenienced or damnified by the assertion of an outstanding title already held or to grow out of the adverse pretension. The plaintiff has a right to be quieted in his title whenever any claim is made to real estate of which he has any possession, the effect of which claim might be litigation or a loss to him of his property." Again, in *Joyce* v. *McAvoy*, 31 Cal. 273 [89 Am. Dec. 172], we find a situation not unlike the case before us. There it was claimed that a prior judgment in a quiet title action was void as to the plaintiff and not binding upon her for the reason that at the time a former proceeding was had the plaintiff (then a minor), though a party thereto, had no vested right, title or interest in the premises; that her right accrued subsequent to the judgment rendered therein, when she obtained her majority, and was not affected thereby. "It is claimed, however, that the plaintiff had no interest at the date of the judgment in *Lake* v. *Joyce et al.*, that her title subsequently vested, and was therefore not affected by the judgment in said action. . . . In short, it is claimed that she had an interest under the deed and at the same time that she had not; that the instrument gave her rights which could not be defeated provided she could attain majority, but as she might never attain majority, there was no interest vested which she could then set up or be called upon to defend. But there is clearly

no force in this position. If the deed gave her any rights whatever, whether inchoate, contingent or otherwise, which ultimately might be perfected, it served as a basis of a claim which might cloud the title of the real estate and become the subject of judicial investigation under section 254 of the Practice Act.'' It was held that the prior judgment was *res adjudicata.*

We see no escape from the conclusion that this holding in *Joyce* v. *McAvoy* is determinative of the point that interests or rights such as these appellants pleaded as parties defendant in *Bassett* v. *Thornton* can be inquired into and passed upon in a quiet title action, and that that case disposes of appellant's contention.

[11] The finding of the trial court that the judgment in *Bassett* v. *Thornton* is *res adjudicata* and, therefore, a bar to this action, was correct, even though the judgment in the quiet title action was based upon an erroneous construction of the deed to O. T. Bassett. [12] A judgment, though erroneous, is none the less a bar to a second action between the same parties or their privies with respect to the same subject matter. A declaration now that the judgment in the case referred to is void because it was wrong would be in violation of established principles of law. [13] In passing upon the plea of *res adjudicata,* the question is not whether the court decided the point rightly or wrongly, but the question is, did the court decide the point, and is the decision final. (*Lamb* v. *Wahlenmaier,* 144 Cal. 91 [103 Am. St. Rep. 66, 77 Pac. 765].) As was also said in *Joyce* v. *McAvoy, supra,* it is one thing to attack a judgment on appeal, or by some direct proceeding known to the law to vacate it, and quite another thing to attack it collaterally when it comes up in evidence, as is sought to be done in this case. Under the issues in *Bassett* v. *Thornton,* the question was whether there was a remainder outstanding, and the jurisdiction of the court was not affected by its nature. The plaintiff therein had a right to an adjudication upon his title, and of necessity the court could not make it without determining whether the asserted remainder existed, and that is precisely what occurred. Any mistake then made cannot be corrected here indirectly by this collateral attack, and the judgment must stand. It would indeed be a strange paradox if now, after

having submitted their claims to adjudication before a tribunal empowered to hear and determine them, the very same parties can be heard to say that because the claims pleaded were those of contingent remaindermen, the court was thereby ousted of jurisdiction. Jurisdiction did not depend upon the nature of the *claim* made by them, for if they could make *any* claim whatever, the court had power to determine whether it was well founded. The practical result of appellants' contention that the judgment against them in *Bassett* v. *Thornton* is not *res adjudicata,* because the remainder which they there *pleaded* was a contingent remainder and therefore not such an interest as could be adjudicated in an action to quiet title would lead to the absurdity that no person apparently vested with title to real property, who believes or claims that he owns in fee, can have his title quieted against others who pretend or assert that he is only a life tenant and that they have a contingent remainder therein, because, forsooth, on the face of their pleadings they show they have no present claim or interest upon which any adjudication can be had. The law does not permit the holder of a presumptively good title to remain thus helpless in the presence of such claims by others.

[14] With regard to the laches of the appellants as a bar to this action, they seek to differentiate this case and the Akley case on the ground that the trial court found the laches of plaintiff Josephine M. Akley to be prejudicial, but did not so find with regard to the other plaintiffs; that the evidence does not show prejudicial laches, and hence that these appellants are not barred thereby. The finding, so far as relevant, reads as follows: "XXXII. The court further finds that there was no justification whatsoever for the long delay of Josephine M. Akley in bringing this action; that such delay was prejudicial to the defendant Charles N. Bassett, and that said Josephine M. Akley and the defendant Ida L. Kelso also, guilty of laches in so far as the doctrine of laches may be applied, if at all, to the facts in evidence." The action was brought by several parties of whom Josephine M. Akley was only one, and if there was long and prejudicial delay in "bringing this action" they all participated therein equally with her. If the first clause of this finding had been so framed as to read that there was no justification whatever for the long delay of Josephine M. Akley "and the

other plaintiffs" in bringing this action we apprehend no
possible question could arise as to its import.   Conceivably
the first clause of this finding taken by itself apart from the
context and divorced from other findings might be open to
the objection that it failed to find that the laches of the
plaintiffs other than Josephine M. Akley was also preju-
dicial.   But we think such construction, even as the finding
reads, is strained.   Assuming that it is subject to the mean-
ing appellants give to it, under well-established rules there
is no proper basis for saying that the trial court failed to
find that appellants' laches was prejudicial.   Elsewhere the
findings fully cover the facts upon which prejudice to the
respondent arose from the long delay of all the plaintiffs in
bringing this action.   Findings II and XIV are to the effect
that paragraphs IV and XIV of the answer are true, which
allege the improvement of the property by respondent
by planting the same to walnut trees, the development of
water for irrigation by pumping plants and wells, and the
distribution thereof by the construction of ditches and flumes,
the care and cultivation of the property, and the expenditure
in and about these things by the respondent of large sums
of money, all of which was done openly and notoriously,
more than ten years before the commencement of this action,
with the constructive knowledge of the plaintiffs, and with-
out any assertion of ownership by them, or any objections
thereto.   Finding number XVI is that the allegations of
paragraph XVII of the answer are true, relative to the sale
by the respondent of lots and blocks aggregating over 300
acres out of the original tract; and finding IV states that
it is true that the amount of the rents, issues and profits re-
ceived by the respondent was not "in excess of $1,000,000.00."
"It is elementary that if the findings of fact are reasonably
susceptible of such construction as will support the judgment,
they must receive that construction rather than one that will
not support it."   (*People* v. *McCue,* 150 Cal. 195 [88 Pac.
899].)   [15]   Findings must not only be construed together,
but must be so construed, if possible, as to support the judg-
ment rather than destroy it; they are to be liberally construed,
and their language should not be so strained by the courts
as to make out a case of conflict; they cannot be altogether
detached from each other and considered piecemeal, and if
they be doubtful or obscure reference may be had to the

context for the purpose of ascertaining the meaning. (*Barthel* v. *Board of Education,* 153 Cal. 376 [95 Pac. 892]; *Zihn* v. *Zihn,* 153 Cal. 405 [95 Pac. 868]; *Corea* v. *Higuera,* 153 Cal. 451 [17 L. R. A. (N. S.) 1078, 95 Pac. 882]; *Murray* v. *Tulare Irr. Co.,* 120 Cal. 311 [49 Pac. 563, 52 Pac. 586]; *Ames* v. *San Diego,* 101 Cal. 390 [35 Pac. 1005]; *Paine* v. *San Bernardino etc. Co.,* 143 Cal. 654 [77 Pac. 659]; *Alhambra Water Co.* v. *Richardson,* 72 Cal. 598 [14 Pac. 379]; *Heaton etc.* v. *Arper,* 145 Cal. 282 [78 Pac. 721]; *Mitchell* v. *Hutchinson,* 142 Cal. 404 -[76 Pac. 55]; *Haight* v. *Haight,* 151 Cal. 90 [90 Pac. 197].) [16] Furthermore, it has been held that "whenever, from the facts found . . . other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court, and upon an appeal from that judgment this court will not draw from those facts any inference of fact contrary to that which may have been drawn by the trial court for the purpose of rendering judgment." (*Breeze* v. *Brooks,* 97 Cal. 72 [22 L. R. A. 257, 31 Pac. 742]; *Warren* v. *Hopkins,* 110 Cal. 506 [42 Pac. 986]; *Krasky* v. *Wolpert,* 134 Cal. 338 [66 Pac. 309]; *People etc. Bank* v. *Rickard,* 139 Cal. 285 [73 Pac. 858]; *Ripperdan* v. *Weldy,* 149 Cal. 667 [87 Pac. 276].) Fairly construed, the finding in question is itself necessarily a finding that the laches of these appellants as well as Mrs. Akley was prejudicial, and particularly when taken in connection with other findings.

[17] Let it be conceded that laches in legal significance is not mere delay, but delay that works to the disadvantage of another. (*Bell* v. *Hudson,* 73 Cal. 285 [2 Am. St. Rep. 771, 14 Pac. 791]; *Ex-Mission L. & W. Co.* v. *Flash,* 97 Cal. 610 [32 Pac. 600]; 21 Cor. Jur. 221; 10 R. C. L., p. 396.) Prejudicial laches depends upon certain well-recognized elements, among which are expenditures and changes in the subject matter. [18] The doctrine of laches bars an action where a party remains passive while an adverse claimant incurs risks, enters into obligations or makes outlays in improving property, paying taxes thereon, or otherwise in reliance on his own right. (21 Cor. Jur., p. 232.) [19] Changes occurring in the subject matter, or in the position of the parties relative thereto, resulting in the impossibility of placing them *in statu quo,* or a marked appreciation in the value of the property, when rights might have been

asserted before such change and the granting of relief would in consequence thereof work inequity, are ordinarily fatal to a plaintiff's case. (21 Cor. Jur., p. 232; *Chapman* v. *State Bank,* 97 Cal. 155 [31 Pac. 896]; *Stevenson* v. *Boyd,* 153 Cal. 630 [19 L. R. A. (N. S.) 525, 96 Pac. 284]; *Andreson* v. *Regenold,* 166 Cal. 44 [134 Pac. 999].) The evidence shows that the property in question was dry, unimproved land when respondent's father entered upon it in 1895. He set it out in part to young walnut trees in 1898, which were kept up and the area there planted so enlarged by respondent that it finally consisted of a walnut grove of about 237 acres. About 28 acres of the land has been placed under irrigation and was and has continued to be used by respondent for the growing of annual crops. The walnut trees came into bearing eight or ten years after they were originally planted. In addition to the farmhouses, pumping plant, and irrigation system placed upon the property by the elder Bassett, the respondent, first by his guardian and then by himself personally or through his superintendent or manager, constructed other farm buildings on the property, installed additional pumping plants with the necessary appliances for irrigation, cared for, kept up, and maintained the property, and has thus expended upward of $50,000 for those purposes. During his lifetime the elder Bassett, having caused the land to be surveyed and subdivided into acreage lots, and a map thereof to be prepared and recorded, sold parcels from the original tract, aggregating about 128 acres; and respondent continued so to do, until his total sales, aggregating something more than 300 acres, reduced his holdings from the original 814 acres to approximately 265 acres, comprising the walnut grove and "grain patch." The rents, issues, and profits that have accrued to him from such sales, and from the operation of the property in question, are, under the findings, based on the admission contained in respondent's answer, "not more than $1,000,000.00," which the respondent has applied to his own use and benefit. In all of the period of seventeen years from 1901 to 1918, while these changes were being effected in the property itself, the appellants said nothing and did nothing. [20] In these circumstances, the granting of the relief here sought would be inequitable.

But it is contended, even though it is generally the rule that laches bars the enforcement of rights where a party remains passive while an adverse claimant makes expenditures in improving the property, paying taxes, etc., his inaction does not bar relief where the rents received exceed the expenditures. The trial court found in finding IV "that the amount of rents, issues and profits of the said real estate collected since March 13, 1901 . . . was sufficient to pay all taxes upon said real property and the expenses of the care, management, up-keep and cultivation thereof, and of the making of improvements thereon . . . during said period." Our attention is called to cases from other jurisdictions which hold that where rents exceed the expenditures, the relief sought, though long delayed, will not be denied on that account. (*Black* v. *Baskins*, 75 Ark. 382 [87 N. W. 647]; *Peabody* v. *Burri*, 255 Ill. 592 [99 N. E. 690]; *Hinds* v. *Surbeck*, 260 Ill. 606 [103 N. E. 599].) And by so much the more, it is suggested, ought the rule not operate to bar this action because of the further finding that the property was highly profitable to respondent. It appeared in these cases that where there were any improvements they were either of a temporary character or of little worth, and apparently there was no appreciable change in the condition of the properties or their value. Thus, there being no other equitable consideration in which prejudice could be predicated, it was held that the laches was not prejudicial. Conceding that where such a situation obtains, a person cannot justly be deprived of his rights because of his mere delay in asserting them, it does not follow that we can generalize therefrom and adopt the rule applied in these cases as the governing principle here. In *Kleinclaus* v. *Dutard*, 147 Cal. 245 [81 Pac. 516], it was said that "there is no artificial rule as to the lapse of time or circumstances which will justify the application of the doctrine. [21] Each case as it arises must necessarily be determined by its own circumstances, as is said by this court in *Bell* v. *Hudson*, 73 Cal. 285, 288 [14 Pac. 791]: 'In other words, the question is addressed to the sound discretion of the chancellor in each case.'" [22] Here, in the course of unexplained and inexcusable delay of the appellants for a period of seventeen years, expenditures running into many many thousands of dollars were made by respondent for improvements of a sub-

stantial and costly nature, materially improving and changing the character of the property itself, and necessarily greatly increasing its value and availability, and resulting in its transformation from nonproductive property into a highly improved and profitable walnut grove, and by reason of energy and business ability of the respondent therein, he has effected the sale of adjoining lands comprising more than half of the property to which he fell heir, obtaining therefrom rents, issues, and profits which may amount to $1,000,000. We are of the opinion that it would be impossible now to place the parties *in statu quo;* that the laches of the appellants, as found by the trial court and as established by the evidence, is prejudicial and is a bar to this action.

It was held in the Akley case that the possession of respondent's father as a life tenant was not adverse and did not start the statute of limitations running against Mrs. Akley during the life estate, "but after such estate terminated the possession, unless in some way qualified, did become adverse, the statute of limitations did begin to run at that time." (See, also, *Pryor* v. *Winter*, 147 Cal. 554 [109 Am. St. Rep. 162, 82 Pac. 202].) If the evidence sustains the finding that the possession of the property was adverse after the life estate terminated, the same conclusion should obtain here against these appellants. **[23]** We think the evidence does support such finding. There was no interval of time from March 13, 1901, to the day when this action was commenced, on June 24, 1918, when the respondent himself, or by his guardian, or his manager and agent, who was his business associate, was not in the actual possession and occupancy of this property. His occupancy and possession were open, exclusive, hostile, and notorious, under a claim of right, and accompanied by the payment of all taxes. In addition to the facts already stated in our discussion of the question of laches, a foreman or superintendent was constantly in immediate charge of the property, and he and the farm-hands or laborers under him were continuously on the ground doing the work of irrigating, cultivating, and otherwise attending to the property. **[24]** The contention that owing to the status of the parties as cotenants the possession of respondent was not of such a character as to be adverse to appellants as his cotenants was, in view of the evidence

here, definitely settled in the Akley case adversely to such claim.

We are asked to reconsider the determination of the supreme court in the Akley case, to the effect that the doctrine of laches is applicable to an action in partition where conflicting claims to the property are involved and an accounting is sought. We may not do so. [25] A declaration of the law by the supreme court is the law of this jurisdiction, binding upon every inferior court in the state unless and until it be reversed or overruled by the supreme court. Likewise, with regard to two other contentions: First, that the finding of respondent's adverse possession of the property, notwithstanding his personal nonresidence in this state on March 13, 1901, and during any consecutive period of five years thereafter until the suit was brought, is contrary to law; and, second, that the finding that this action was not barred by section 318 or 319 of the Code of Civil Procedure is in conflict with the finding that a recovery could not be had because the respondent had acquired a prescriptive title to the property under section 1007 of the Civil Code, thereby rendering the one or the other contrary to law. [26] Both of these questions, under identical circumstances, except as to the parties concerned, were passed upon in the Akley case, and decided adversely to appellants' contentions. Although the parties are different, the rule of law is thereby established.

The order vacating the original judgment and directing the entry of the substituted judgment, and the judgment entered in pursuance thereof, have heretofore been reversed in the Akley case. As the result thereof the one originally entered was left in force and is the judgment in the case. The judgment is affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 25, 1924.

All the Justices concurred.